## RANEY & HAMON v. HAMILTON & WHITE. (No. 6595.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 12, 1921. Rehearing Denied Nov. 2, 1921.)

**1. Sales ⊂⇒279—"Good" and "merchantable" and "sound" cattle defined.**

A warranty that cattle were "good and merchantable" was no more than a warranty that they were "sound," which simply means that they are free from disease, and not that they are ticky and thus immune from tick fever.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good; Merchantable; Sound.]

**2. Evidence ⊂⇒13—Judicial notice not taken of course of tick fever.**

While it may be true that courts may take judicial notice of the fact that the Texas or tick fever in cattle is produced by the margaropus annulatus, and that the disease thus produced in cattle is often fatal, the facts of the peculiar course of the disease, or the length of time required to develop it to the fatal stage, are not so notorious and general or so common to the knowledge of man as to support judicial notice.

**3. Evidence ⊂⇒9—Scientific facts of which judicial notice taken.**

Scientific facts of which judicial notice is taken must be universally known, so that they are found in encyclopedias and dictionaries, or in the treatises of standard authors, or must be of such notoriety and so generally understood that they have become a part of the general knowledge of all.

**4. Appeal and error ⊂⇒930(3)—Issues not submitted to jury resolved in support of judgment.**

Where there was no finding on an issue, and it was not submitted to the jury, and no request was made that it be submitted, such issue must be resolved on appeal in support of the judgment rendered by the trial judge.

**5. Evidence ⊂⇒387(1)—Parol evidence inadmissible to contradict proclamation of Governor fixing quarantine line.**

Where proclamation fixing quarantine line was introduced in evidence, admission of oral testimony fixing the line upon any other location is inadmissible.

**6. Evidence ⊂⇒460(2)—Parol evidence admissible to show quarantine line passed through certain town.**

Where proclamation of Governor fixed quarantine line with the meanderings of the Pecos river, there was no error in admitting parol evidence that the line passed through a certain town, if such town was situated on the river and line.

**7. Appeal and error ⊂⇒1050(2)—Admission of immaterial evidence held harmless.**

Where it appeared in a case that defendant sellers of cattle did not warrant that they were ticky and immune from Texas fever and were not ranged on either side of a quarantine line, parol evidence that the line passed through a certain town, if objectionable, was immaterial and harmless.

**8. Trial ⊂⇒356(5)—Issue held eliminated by express and implied findings.**

In an action for damages by purchasers against sellers of cattle warranted to be sound at the time of the sale, failure of the jury to answer the question, "Did any of the cattle involved in this suit die from Texas or tick fever?" was immaterial, where the jury found that the cattle were sound at the time of the sale, thus eliminating such issue.

**9. Trial ⊂⇒118—Argument that statute fixed quarantine line at certain place held proper.**

In an action by purchasers of cattle which sickened and died to recover damages, the trial court erred in directing the jury to disregard argument of plaintiff's counsel that "Mr. W. says that the quarantine line is at L., but, as I understand the matter, the Legislature of 1917, fixed the line at the Pecos river, and that has not been changed."

**10. Appeal and error ⊂⇒1060(4)—Instruction to disregard argument held harmless in view of verdict.**

In an action by purchasers to recover damages for cows which sickened and died of tick fever, any error of the court in sustaining objection to argument of plaintiff's counsel that "Mr. White says that the quarantine line is at Lozier, but, as I understand the matter, the Legislature of 1917 fixed the line at the Pecos river, and that has not been changed," could not have injured plaintiffs, where the jury found that defendants only warranted the cattle to be sound at the time of the sale, and did not warrant that they were ticky and immune from Texas fever by reason of having ranged south of the Pecos river.

Appeal from District Court, Val Verde County; Joseph Jones, Judge.

Action by Raney & Hamon against Hamilton & White. Judgment for defendants, and plaintiffs appeal. Affirmed.

L. Old, of Uvalde, Walter Jones, of Del Rio, and Love & Smith, of Uvalde, for appellants.

Boggess, Smith & La Crosse, of Del Rio, and G. B. Fenley, of Uvalde, for appellees.

SMITH, J. Appellees were engaged in the cattle business, with ranches in Kinney, Val Verde, and Terrell counties. Appellants were engaged in buying and selling cattle in the same section of the state. Appellant Hamon had been in the cattle business in that section for 15 years. Early in February, 1920, appellants contracted with appellees for 500 cattle. The cattle were brought from appellees' Kinney county ranch and delivered to appellants at Standart, in Kinney county, on February 20, at which time appellants made another contract with appellees by which the latter agreed to deliver 160 cattle to ap-

pellees at Uvalde, at a stipulated price. It was agreed that this bunch should "average up" with the cattle in the first bunch in class, condition, and quality. In pursuance of this contract appellees shipped 160 cattle from their Terrell-Val Verde county ranch to Standart, and appellants agreed to and did receive them there, on March 2d or 3d, after inspecting them and finding them to very fully "average up" with the first bunch, so far as outward appearances disclosed their condition.

The state live stock quarantine line, at this time, was marked by the Pecos river, which runs along the east line of Terrell county and from there down through the western portion of Val Verde county, traversing one of appellees' ranches. There is a settled theory, which was developed in this case, that cattle ranging below, or east of, this line, are infested with a certain species of ticks, which renders them immune from the Texas or tick fever, which is often fatal to cattle; that cattle ranging above, or west of, this line, are not so infested or immune, and when driven or shipped into the territory below the line become infested with ticks, which communicate the fever to the cattle, with fatal results.

After appellants accepted delivery of the cattle at Standart on March 2d or 3d, they shipped them to Uvalde, where they were unloaded and placed in a nearby pasture on March 6th. On March 7th or 8th one of the cattle died, and during the next two or three weeks 40-odd others died, the evidence tending strongly to show, if not conclusively showing, that they all died of Texas or tick fever, although no symptoms of the infection were apparent when they were unloaded on March 6th.

Appellants sued appellees for damages occasioned by the loss of the cattle, alleging that when the contract was made appellees represented and warranted the cattle to average up with the first bunch, to be "good, sound, and merchantable," that they were to come from below the quarantine line, and that they were ticky and immune from the tick fever.

Upon the trial, and in response to special issues, the jury found: (a) That the appellees did not warrant that the cattle "were ticky cattle, from below the tick or quarantine line, and not susceptible to, but immune from, Texas or tick fever"; (b) that appellees did warrant that the cattle "were all good, sound, and merchantable at the time of making the contract"; and (c) that none of the cattle were "diseased at the time of the making of said sale." In response to these findings the court rendered judgment in favor of appellees, this appeal resulting.

[1] Appellant Hamon, who conducted the negotiations for appellants, testified that when the deal was made appellees not only represented the cattle to average up with the first bunch, and to be good, sound, and merchantable cattle, all of which appellees readily admitted to be true, but that they would come from below the line and were ticky and immune from the fever. It was conceded that the cattle averaged up with the first bunch, so that warranty is out of the case. The jury expressly found that appellees did not warrant or represent that the cattle were to come from below the line, or that they were ticky, or immune from the fever, and thus this warranty was eliminated. This brings us to the remaining warranty, that the cattle were "good, sound, and merchantable." Just what was meant by the terms "good and merchantable" was not specifically discussed or disclosed, but, as a practical matter, those qualities relate, we take it, to externals, and were settled by the inspection made by appellants when the cattle were delivered and accepted as in compliance with the agreement between the parties, or, in any event, these qualities could not mean more than were contemplated in the term, "sound." If upon inspection the cattle appeared to average up with the first bunch in class and apparent condition and quality, as they were found to be by appellants, and were "sound," then they must also have been "good" and "merchantable." So the only remaining inquiry is: Were the cattle "sound"? To be "sound," as we understand the term to be used here, means to be free from disease; and the jury found in this case that none of the cattle in question were "diseased" at the time the sale was made. It seems to us that this completely disposes of the case as made, and that the learned trial judge rendered the only judgment that could have been rendered under the pleadings and the evidence.

[2, 3] Appellants contend that, because the cattle died of fever immediately after their delivery, this court must take judicial notice of the fact that they were infected with the fever at the time of delivery, and that this infection amounted to disease in its incipiency, and that therefore the warranty that the cattle were good, sound, and merchantable was breached; that the courts must take judicial notice of the peculiar characteristics of the so-called Texas or fever tick, and of the disease said to result therefrom, and particularly of the period within which the presence of the tick on the animal produces the fever. Numerous authorities are cited to support this position, which is urged ably and ingeniously by learned counsel. In addition, appellants have filed with the papers here pamphlets purporting to have been issued by the federal Department of Agriculture embracing scientific discussions, by agents of the Department, of the various characteristics of the fever tick, which is designated by the technical name "margaropus annulatus." While it may be true that the courts may take judicial notice of the

fact that the Texas or tick fever in cattle is produced by the margaropus annulatus, and that the disease thus produced is often fatal, we do not believe that the facts of the peculiar course of the disease, or of the length of time required to develop it to the fatal stage, are so notorious and general or are so common to the knowledge of man as to support judicial notice. Scientific facts, in order to attract judicial notice, must be universally known, so that they are found in encyclopedias and dictionaries, or in the treatises of standard authors, or must be of such notoriety and so generally understood that they have become a part of the common knowledge of all. 15 R. C. L. § 55. The peculiar course and characteristics of margaropus annulatus, and of the diseases resulting therefrom, have not in our opinion become so universally known as to become the subject of judicial notice. We think, then, that the question of whether or not the cattle involved were infected with tick fever, or any other disease, at the time of their sale or delivery to appellants, was one of fact to be determined by the jury, and the finding of the jury in this case that the cattle were free from disease at that time must be regarded as settling the question against appellants.

[4] For another reason we think the whole quarantine, tick, and fever question was eliminated from the case, except as it might indirectly bear upon the warranty that the cattle were sound at the time of the sale. Appellees testified that at the time the contract was made they explained fully to appellants the then location of the cattle on the range with reference to the quarantine line and tick conditions, and that appellants thereupon expressed a willingness to risk the dangers of infection of the cattle from the tick fever. While appellants stoutly denied this, there was no finding of the jury upon the issue thus raised, nor was such issue submitted, nor was there any request therefor. In this state of the record the issue must be resolved in support of the judgment rendered by the trial judge. In other words, we must assume that at the time they contracted for the cattle appellants knew they were ranging in a pasture through which the quarantine line ran, and might or might not be immune from tick fever, and that, knowing this, appellants, nevertheless, assumed all the risks incident to these conditions.

By their second, third, and fourth assignments of error appellants complain of the refusal of the court to instruct a verdict in their favor. Under the fifth assignment it is contended that the evidence required a verdict for appellants, and by their sixth assignment appellants insist that the judgment was contrary to the evidence. Obviously the conclusions we have reached require us to overrule these several assignments.

[5-7] Appellants complain in their first assignment of error of the admission of the testimony of one of the appellees that the quarantine line was located at Lozier, in Terrell county. The proclamation of the Governor, which was in evidence, fixed the line with the meanderings of the Pecos river, and we think the admission of oral testimony fixing the line upon any other location would have been error. The bill of exceptions does not show the location of Lozier with reference to the Pecos river, the true line. So far as the record pointed out to us shows, Lozier may be situated on the river and line. If it is, there surely could have been no error in admitting the testimony. But, in our view of the case, if this testimony was objectionable, it was harmless, and the error was immaterial. The first assignment of error was overruled.

[8] Complaint is made of the failure of the jury to answer the question submitted to them, "Did any of the cattle involved in this suit die from Texas or tick fever?" We think, for reasons already discussed, that the express and implied findings had the effect of eliminating from the case the issue embraced in this question, and that, the question being immaterial, the failure to answer it was likewise immaterial. The jury found that the cattle were free from disease when sold to appellants. That they subsequently sickened and died does not affect the case. The sixth assignment of error raising this question, is overruled.

In their seventh assignment of error appellants complain of the argument made to the jury by one of counsel for appellees. This argument was properly objected to, and the court at the time directed the jury to disregard it. The argument objected to was not, in our opinion, of such inflammatory nature as to jeopardize appellants' rights, and we think the action of the court in striking it out was sufficient to neutralize any effect it might have had upon the jury, and we must overrule the assignment.

[9, 10] Complaint is made in appellants' ninth assignment of error of the action of the trial court in sustaining appellees' objection to, and directing the jury to disregard, certain argument made by one of appellants' counsel that—

"Mr. White says that the quarantine line is at Lozier, but, as I understand the matter, the Legislature of 1917 fixed the line at the Pecos river, and that has not been changed."

We are inclined to think that counsel was within his rights in making this argument, and that he should not have been interrupted. But surely it cannot be said the error complained of could have injured appellants. This assignment will be overruled.

We think this was purely a fact case, submitted to the jury in manner and form ap-

proved by the parties, and the findings were supported by the evidence, warranting the judgment rendered.

Affirmed.