## ENGLISH v. MILLER.
### No. 3671.

Court of Civil Appeals of Texas. Amarillo.
Nov. 4, 1931.

Rehearing Denied Dec. 2, 1931.

See, also, 33 S.W.(2d) 477.

Cooper & Lumpkin, of Amarillo, for appellant.

Cook, Smith, Teed, Sturgeon & Wade, of Pampa, for appellee.

JACKSON, J.

This suit was instituted in the district court of Gray county, Tex., by the plaintiff, Lizzie Miller, a widow, against Harold W. English, the defendant, to recover damages for his alleged negligence in causing the death of her minor son.

The plaintiff alleged that her son, William Miller, was a minor, sixteen years old at the time of his death, and resided with her at her home in McLean, Tex.; that he was in good health, of robust size, industrious, ambitious, and contributed to the support and maintenance of plaintiff; that on January 26, 1928, the defendant, who owned and operated an aeroplane, came to the town of McLean in his said plane, and for compensation took her minor son William, without her knowledge or consent, together with another boy, for a ride in said plane. The plaintiff pleads as grounds of negligence certain defects in the plane and some acts of the defendant, which for the purposes of this appeal are unnecessary to state, because not proved or submitted to the jury.

She alleged that the defendant, while making the trip with her son and the other boy in the plane, made loops at an altitude between two hundred and four hundred feet; that in completing such loops the plane would approach within a few feet of the ground; that such acrobatic performance at such low altitude was dangerous and constituted negligence; that, while attempting to make one of such loops at such low altitude, the plane fell and crashed, resulting in the death of her son and the other boy; and that defendant's negligence in attempting such acrobatic feats at said altitude was the proximate cause of the death of her son. She sufficiently alleges her right to maintain the suit and the facts relative to the amount of damages she seeks to recover.

The defendant answered by general demurrer, general denial, and pleaded in detail certain acts of the deceased as contributory negligence, and also alleged as a defense that the deceased assumed the risk and danger incidental to the flight.

In response to special issues submitted by the court, the jury found that the defendant was making loops at an altitude between two hundred and four hundred feet; that in so doing he was negligent, and that such negligence was the proximate cause of the death of the deceased, and that the deceased was not guilty of contributory negligence; that plaintiff sustained damages in the sum of $3,125, for which sum judgment was entered for plaintiff, and defendant appeals.

The appellant presents as error the action of the trial court in refusing to direct a verdict in his behalf as requested, because the evidence does not show that appellant was guilty of any act of negligence, as the undisputed testimony shows that he did not commit any act of negligence charged.

If the appellant intends to assert that there was no evidence to authorize the submission of the question of negligence to the jury, we are not authorized to consider this assignment. Hall Music Co. v. Robertson, 117 Tex. 261, 1 S.W.(2d) 857.

However, we will assume that his contention is to question the sufficiency of the evidence to support the finding of the jury.

The record shows without dispute that the defendant owned and operated an aeroplane; that he went to McLean, Tex., on January 26, 1928, and took another boy and deceased for a ride; that he landed and immediately, for compensation, carried the other boy and deceased for another ride; that on the second trip he made a loop, or a complete vertical circle, and attempted to make a second loop, which was never completed, the plane falling and crashing, resulting in the death of William Miller; that the defendant was an experienced pilot; that the machine was a Lincoln standard plane, without defects in the mechanism, and was in very good condition.

The testimony shows that at the time he was attempting to complete the second loop he was just a little way above the tops of the houses; that, while making the second loop, the tail of the plane hit a stack of maize. The finding of the jury that with William Miller as a passenger the defendant made loops at an altitude of between two hundred and four hundred feet of the ground is amply supported by the testimony; in fact, this finding is not questioned by appellant.

The appellant testified in his own behalf: That on the second trip they made the first loop, started into the second loop, and went into a spin, and crashed coming out of the second loop. That he was fifteen hundred feet high in making the first loop and one thousand to twelve hundred feet high when he came out of the first loop and started into the second loop. "I made a loop in about three hundred feet." That he got clear over and completed the second loop, but could not straighten up. That the wind was blowing about forty miles an hour. The jury on sufficient testimony discarded the evidence of this witness as to the altitude of the plane at the time he made the loops, and in our opinion a fair interpretation of the testimony discloses that the appellant, in making a loop, reduced his altitude about three hundred feet.

Negligence may be established by circumstantial evidence, and the cause of an accident may be inferred from such evidence.

In Bock v. Fellman Dry Goods Co., 212 S. W. 635, 637, the Commission of Appeals quotes with approval from the Supreme Court

of Iowa (Lunde v. Packing Co., 139 Iowa, 688, 117 N. W. 1063) the following: "A cause being shown which might produce an accident, and it further appearing that an accident of that particular character did occur, it is a warrantable inference, in the absence of showing of other cause, that the one known was the operative agency in bringing about such result."

The evidence is undisputed that the aeroplane was without mechanical defects and in good condition and that appellant was an experienced pilot; that in making the first loop immediately preceding the second loop in which the crash occurred the altitude of the plane was reduced three hundred to five hundred feet; that appellant made a loop in about three hundred feet. The jury rejected, on sufficient testimony, the contention of appellant relative to the altitude of the plane and to the cause of the crash. The appellant testified that he made a loop in about three hundred feet, and, if he undertook to make a loop, as found by the jury, at an altitude between two hundred and four hundred feet, over houses, buildings, haystacks, etc., we think it tends to show he undertook to make a loop at an unsafe altitude, and the jury was warranted in finding him guilty of negligence in undertaking the loop at such an altitude.

In 1914, in Platt v. Erie County Agricultural Soc., 164 App. Div. 99, 149 N. Y. S. 520, 521, in an opinion by the New York court, it is held that: "Although aeroplanes are of comparatively recent invention, yet we think their use has now become so general that the term 'aeroplane' may now be taken to have a specific meaning and to describe a general type of machine, with substantially as much definiteness as does the term 'automobile.' We may therefore take judicial notice of the general characteristics of this machine."

In Jones' Commentaries on Evidence, vol. 1 (2d Ed.) 749, § 424, it is said: "Depending upon the importance of the new development to the public, common knowledge follows. Thus common knowledge has been held to include matters in connection with the production of oil and gas, the nature and dangers of electricity and the dangers of many various devices and situations."

At page 834, in volume 1, the same author states that: "Jurors are not presumed to be ignorant of what every one else knows. In practice they occupy much the same position as the judge with regard to matters of common knowledge and notoriety."

Common knowledge as a rule of evidence is universally applied by the courts to the operation and effect of natural forces and to such scientific and mechanical facts and principles as are of such universal notoriety that they may be regarded as a part of the common knowledge of all persons.

In International & Great Northern Ry. Co. v. Eckford, 71 Tex. 274, 8 S. W. 679, 680, the Supreme Court holds: "Whether the acts and omissions in evidence constituted negligence, without which the injury had not happened, was to be determined by the jury. The common knowledge and experience of jurors, their acquaintance with the affairs of life and the motives of men acting under different conditions, are specially called into request in determining such questions.' "

In Raney & Hamon v. Hamilton & White, 234 S. W. 229, 231, the Court of Civil Appeals of San Antonio says: "Scientific facts, in order to attract judicial notice, must be universally known, so that they are found in encyclopedias and dictionaries, or in the treatises of standard authors, or must be of such notoriety and so generally understood that they have become a part of the common knowledge of all."

In Williams v. Chew, 19 S.W.(2d) 68, 69, in an opinion by the Galveston Court of Civil Appeals, it is held: "Courts may not close their eyes to facts of common knowledge and deny litigants the benefits of such facts."

"Judicial notice is taken of discoveries and inventions that have become of general and common use and of the nature and use of common mechanical devices, such as the telephone, the bicycle, the aeroplane, the automobile, etc." 23 C. J. p. 151.

It is our opinion that the evidence is sufficient to authorize the court to submit the issue and to warrant the finding of the jury that appellant was guilty of negligence, independent of the doctrine of common knowledge, but the writer is also of the opinion that the rule of evidence applying common knowledge is applicable in this case.

The doctrine of res ipsa loquitur, under the facts revealed by this record, would be applicable as held in Seaman v. Curtiss Flying Service, Inc., 231 App. Div. 867, 247 N. Y. S. 251, but for the fact, as contended by appellant, that appellee pleaded specific acts of negligence, for which reason the doctrine cannot be invoked or applied in this case.

The Air Commerce Regulations of the United States inhibit acrobatic flying in an aeroplane by any person carrying passengers for hire, but such regulations were not pleaded, and, had they been, appellant was evidently engaged in intrastate flying, and the Legislature of this state did not adopt the rules and regulations of the federal government until some time after January 26, 1928. Article 1137b, P. C.

The appellant asserts in his brief: "The judgment of the Trial Court is erroneous in that the Court did not submit to the jury the issue as to whether appellant, while operating the aeroplane with appellee's son riding therein, was guilty of negligence in making

loops at a low altitude between two hundred and four hundred feet from the ground, but in lieu thereof submitted to the jury the question as to whether appellant was guilty of negligence 'in operating his aeroplane at the altitude and in the manner as you (the jury) may have found he did operate it.' "

The court in his charge instructed the jury that they should not discuss which side should win or what judgment should be rendered, but to determine and find the truth of the facts; defined negligence and proximate cause; and submitted special issues No. 1 and 2, as follows:

"No. 1. Do you find from a preponderance of the evidence that the defendant Harold W. English, on or about the 26th of January, 1928, while operating his aeroplane in Gray County, Texas, and while the said William Miller was riding in his said aeroplane as a passenger, made loops with said plane at a low altitude between two hundred and four hundred feet from the ground? Answer 'Yes' or 'No.' "

"If you have answered the above and foregoing special issue No. 1, 'No,' then you need not answer any of the following issues, but you will have the verdict signed by your foreman and return same into open court. If you have answered the above and foregoing special issue No. 1, 'Yes,' then you will answer the following special issue numbered two:

"No. 2. Do you find from a preponderance of the evidence that the defendant in operating his said aeroplane at the altitude and in the manner as you may have found he did operate it, was guilty of negligence as the term negligence has hereinbefore been defined to you in paragraph No. 5 of this charge? Answer 'Yes' or 'No.' "

Both of these issues were answered in the affirmative by the jury.

The exceptions and objections made by the defendant to special issue No. 2 are, in effect, that said issue is not authorized by the pleading. There is no evidence tending to show negligence on the part of the defendant nor tending to show that it would constitute negligence to fly the plane at an altitude of two hundred to four hundred feet, and the issue assumes that such would be negligence without evidence upon which to predicate such assumption.

In Isbell et al. v. Lennox et al., 116 Tex. 522, 295 S. W. 920, 921, Associate Justice Pierson of the Supreme Court, after quoting article 2185, says: "This statute was designed to correct a very important handicap or evil in the trial of cases. Its purpose in requiring the parties or their attorneys to present to the court their objections to the charge clearly is that the party objecting must apprise the court of the error in his charge with a view to its correction. The objection must

point out to the court the error complained of. If it fails to do that, it does not meet the purpose.and requirement of the statute and is no objection at all." ·

In Black et al. v. Continental Casualty Co., 19 S.W.(2d) 69, 70, Associate Justice Baugh of the Court of Civil Appeals at Austin states: "Appellants' first complaint is directed to the form in which special issue No. 2 was submitted; that is, whether he met death directly or indirectly. * * * No objection was made on the trial to the issue as submitted, and complaint was first made in the motion for new trial. It therefore came too late to be considered here."

In Norwich Union Indemnity Co. v. Wilson et al., 17 S.W.(2d) 68, 78, the Court of Civil Appeals at Dallas refused to consider objections to special issues submitted by the court, "because the objections made to said special issues and definition, respectively, did not point out with any certainty the particular portion objected to, stating in what respect same was erroneous. The objections should have been made with this particularity in order to have conferred on the trial court an opportunity to consider the objections made, with an understanding of the purpose, scope, and effect of same, so that, if error had been committed, same could have been eliminated through the correction of the charge excepted to in the light of the objections made"— citing authorities.

In our opinion the objections to special issue No. 2 presented to the trial court did not apprise him of the error complained of in appellant's brief, and therefore do not require consideration by this court.

■ We have, nevertheless, considered appellant's complaint, and concluded that the contention made in his brief relative to special issue No. 2 does not present reversible error.

The court, after defining negligence and proximate cause, submitted to the jury whether the appellant, with William Miller as a passenger, made loops at an altitude between two hundred and four hundred feet, advising them that if they answered such issue in the negative to proceed no further. He then instructed the jury that if they found from a preponderance of the evidence that appellant made loops at an altitude of between two hundred and four hundred feet, to find whether in operating the plane at the altitude and in the manner they had found, the appellant was guilty of negligence as that term had theretofore been defined to them in the charge. Before answering this issue, the jury had found between two hundred and four hundred feet to be the altitude and looping to be the manner of operating the aeroplane, and, as no other issue of negligence was proven or submitted to them, the only issue before them was whether looping at an altitude between

two hundred and four hundred feet was negligence.

In Patterson v. Williams, 225 S. W. 89, 90, the Court of Civil Appeals approves an issue submitted in the following language: "Was the defendant, Ben Patterson, guilty of any act of negligence with respect to the speed at which he was traveling and in the manner in which he operated said car upon the occasion of the collision of the cars which caused or contributed to cause the death of Gillis Williams?"

In St. Louis, S. F. & T. Ry. Co. v. Houze, 28 S.W.(2d) 865, 867, this court, in an opinion by Chief Justice Hall, holds that a special issue was not reversible error, submitted in this language: "Do you find from the evidence and in the light of attending circumstances that P. E. Houze was, in driving upon the railroad track, guilty of contributory negligence, as that term has been defined to you?"

The objection to this issue was that it authorized the jury to go outside of the evidence and consider all attending circumstances. In disposing of this assignment, it is said:

"In the case of Walcott v. Brander et al., 10 Tex. 419, the court charged the jury: 'That fraud may be proved by circumstances, and that they must therefore look to all the circumstances connected with the transaction.'

"The same objection here urged was made to the charge in that case. The court said: 'The common sense meaning of the language is that they are to look to the circumstances in proof, and it would be so understood by a juror, of ordinary understanding. It would be a forced and strained construction, to say it authorized them to go outside of the testimony, and look to circumstances not in proof; and to claim a reversal on such a ground, would be to ask this Court, as it was merely possible that a very stupid man may have misunderstood the Judge, therefore this Court ought to presume that he had been so misunderstood, in his charge, and reverse the judgment. The correct rule is the very reverse.' Texas & N. O. Ry. Co. v. Diaz (Tex. Civ. App.) 234 S. W. 919."

The appellant urges that:

"The judgment of the Trial Court is erroneous wherein it awarded appellee a judgment against appellant in the sum of $3,-125.00, for said amount is predicated upon the answer of the jury to special issue No. 4 of the Court, which issue was unintelligible, in that said issue submitted by the Court asked the jury, the following question:

"'What damages, if any, if paid now in money, would compensate plaintiff for the pecuniary damages sustained by her, if any, by the death of said William Miller? Answer in dollars and cents.'"

The appellant objected to this issue because it did not present the proper measure of damages; did not limit the jury in determining the amount of damages that could be recovered; and was unintelligible.

The objection that the charge was "unintelligible" was not presented to the trial court.

Immediately following the special issue last above quoted, the court advised the jury as follows:

"You are instructed that in determining said damages of plaintiff, if any, you will consider what the evidence shows with regard to any pecuniary.value in dollars and cents, if paid now to the plaintiff for the services of her deceased son William Miller, from the time of his death until he became twenty-one years of age, after deducting therefrom the cost and expenses, if any, which plaintiff would have expended for his maintenance for the same period of time, and also such other sums as may be shown by the evidence would be equal to the value of any pecuniary benefit in money, property or services that the plaintiff had a reasonable expectation of receiving from the said William Miller, if any she would, after he reached the age of twenty-one years, had he not died.

"In determining the damages sustained by plaintiff by reason of the death of the said William Miller, you are instructed that you cannot take into consideration the mental suffering, grief or bereavement incident to the death of said William Miller on the part of the plaintiff."

While this charge is inaptly worded, it contains all the principles controlling the amount of money that plaintiff was authorized to recover for the death of her son.

The law is settled that plaintiff was entitled to recover as actual damages. from the defendant for negligently causing the death of her son the pecuniary value of her son's services to her from the date of his death until he reached his majority, less the cost and expense of his care, support, and maintenance during the same period, and that she was entitled to recover any sum she had a reasonable expectation of receiving from the son after he reached the age of twenty-one years, had he not been killed; but that she was not entitled to recover for any mental anguish, grief, or bereavement she suffered on account of the death of her son.

These principles are all contained in the issue submitted and the explanation given in connection with such issue. Winnt v. International & G. N. Ry. Co., 74 Tex. 32, 11 S. W. 907, 5 L. R. A. 172; Cole et al. v. Parker et ux., 27 Tex. Civ. App. 563, 66 S. W. 135; Gulf, C. & S. F. Ry. Co. v. Hall et al., 34 Tex. Civ. App. 535, 80 S. W. 133; Houston City Street Ry. Co. v. Sciacca et al., 80 Tex. 351, 16 S. W. 31.

There is no contention that the evidence was insufficient to support the amount found by the jury or that such amount was excessive under this record. The charge limited the jury in determining the amount, to the pecuniary value of the services of the minor during his minority, less the amount that plaintiff would have expended for his maintenance during that time, and to such sum as she had a reasonable expectation of receiving from her son after he reached his majority, had he lived, and expressly excluded any consideration of the mental suffering, grief, or bereavement of the plaintiff incident to the death of her son.

The judgment is affirmed.