ACCEPTED
13-14-00742-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
10/15/2015 4:47:19 PM
Dorian E. Ramirez
CLERK

# Cause Nos. 13-14-00742-CR, 13-14-00743-CR & 13-14-00744-CR

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COURT OF APPEALS
## THIRTEENTH DISTRICT OF TEXAS
## CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
10/15/2015 4:47:19 PM
DORIAN E. RAMIREZ
Clerk

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CHARLES DANE HILL,**
**Appellant**

**VS.**

**THE STATE OF TEXAS,**
**Appellee**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**On Appeal from Cause Nos. 13-11-9140,**
**13-11-9158 & 13-11-9159**
**in the 24th Judicial District Court of Jackson County, Texas**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STATE'S REPLY BRIEF

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ROBERT E. BELL**
**District Attorney**
**State Bar Card No. 02086200**
**Jackson County Courthouse**
**115 West Main Street**
**Edna, Texas  77957**

**JIM VOLLERS**
**State Bar Card No. 20609000**
**2201 Westover Road**
**Austin, Texas  78703**

**ORAL ARGUMENT**
**REQUESTED**

**ATTORNEYS FOR THE STATE**

i

## IDENTITY OF PARTIES AND COUNSEL

1.  Robert E. Bell
    Criminal District Attorney, Jackson County
    State Bar Card No. 02086200
    Jackson County Courthouse
    115 West Main Street
    Edna, Texas  77957
    Email:  ef_mitchell@yahoo.com

    Jim Vollers
    Attorney at Law
    State Bar Card No. 20609000
    2201 Westover Road
    Austin, Texas  78703
    Email:  jimvollers@att.net
    **Attorneys for the State**

2.  Charles Dane Hill
    **Appellant**

3.  Hon. W. A. (Bill) White
    Attorney at Law
    P.O. Box 7422
    Victoria, Texas 77903
    Email:  lawbill0994@att.net.
    **Attorney for Appellant**

4.  Honorable Juergen "Skipper" Koetter, District Judge
    24th Judicial District, Jackson County Courthouse
    115 West Main Street
    Edna, Texas  77957
    Email:  koetter@cscd.net
    **Trial Judge**

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . .     ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . .     iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . .     v

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . .     2

APPELLANT'S ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . .     2

    APPELLANT'S ISSUE NO. ONE:
    THE TRIAL COURT ERRED BY DENYING
    APPELLANT'S REQUEST FOR JURY INSTRUCTION
    ON SELF-DEFENSE BECAUSE APPELLANT PLED
    "NOT GUILTY" WHEN TRIAL BEGAN.

    APPELLANT'S ISSUE NO. TWO:
    THE EVIDENCE IS INSUFFICIENT TO SHOW THAT
    APPELLANT KNEW JASON McCARRELL WAS A
    PUBLIC SERVANT WHEN SHOOTING AT HIM.

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

APPELLANT'S ISSUE NO. ONE (RESTATED). . . . . . . . . . . . . . .     7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .     7

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . .     9

APPELLANT'S ISSUE NO. TWO (RESTATED) . . . . . . . . . . . . . .     11

SUMMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . .     11

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . .     12

iii

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . .     18

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . .     19

# INDEX OF AUTHORITIES

**CASES**:                                                                          **PAGE**

**Brooks v. State**, 323 S.W.3d 893 (Tex.Crim.App. 2010) . . . .     12

**Calloway v. State**, 43 S.W.2d 645 (Tex.Crim.App. 1988) . . .      9

**Clayton v. State**, 235 S.W.3d 772 (Tex.Crim.App. 2007) . . . .12, 13

**Ex parte Nailor**, 149 S.W.3d 125 (Tex.Crim.App. 2004). . . . .     10

**Hooper v. State**, 214 S.W.3d 9 (Tex.Crim.App. 2007) . . . . . .     12

**Jackson v. Virginia**, 443 U.S. 307 (1979) . . . . . . . . . . . . . 12, 13

**Kiffe v. State**, 361 S.W.3d 104
     (Tex.App.-Houston [1st Dist.] 2012) . . . . . . . . . . . . . . . 12, 17

**Miles v. State**, 488 S.W.2d 790 (Tex.Crim.App. 1972) . . . . . .      9

**Moreno v. State**, 341 S.W.2d 455 (Tex.Crim.App. 1960) . . . .      9

**O'Neal v. State**, 491 S.W.2d 130 (Tex.Crim.App. 1973) . . . . .      9

**Parsons v. State**, 271 S.W.2d 643 (Tex.Crim.App. 1954) . . . .      9

**Smith v. State**, 475 S.W.2d 238 (Tex.Crim.App. 1971) . . . . .      9

**Venable v. State**, 397 S.W.2d 231 (Tex.Crim.App. 1966),
     cert. den., 384 U.S.266, 86 S.Ct. 1477, L.Ed.2 525 . . . . .      9

**Williams v. State,** 235 S.W.3d 742 (Tex.Crim.App. 2007) . . . .     13


**TEXAS RULES OF APPELLATE PROCEDURE:**

Rule 44.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

**PUBLICATIONS:**

5 C.J.S., Appeal and Error, § 1464(1), PP. 654-57  . . . . . . . . . .    9

**Cause Nos. 13-14-00742-CR, 13-14-00743-CR**
**& 13-14-00744-CR**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**COURT OF APPEALS**
**THIRTEENTH DISTRICT OF TEXAS**
**CORPUS CHRISTI, TEXAS**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**CHARLES DANE HILL,**
**Appellant**

**VS.**

**THE STATE OF TEXAS,**
**Appellee**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**On Appeal from Cause Nos. 13-11-9140,**
**13-11-9158 & 13-11-9159**
**in the 24th Judicial District Court of Jackson County, Texas**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**STATE'S REPLY BRIEF**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

**COMES NOW, THE STATE OF TEXAS,** Appellee herein, by and through its Criminal District Attorney, and files this, its reply brief in the above-styled cause, requesting that the judgment of the trial court be in all things affirmed, and as grounds therefore would show unto the Court the following:

1

## STATEMENT OF THE CASE

After a jury trial upon appellant's plea of not guilty, appellant was found guilty of the offenses of aggravated assault on a public servant with a deadly weapon in Cause No. 13-11-9140, Count 2; aggravated assault with a deadly weapon in Cause No. 13-11-9158, Count 1, Paragraphs 1, 2, and 3; and deadly conduct in Cause No. 13-11-9159. The jury assessed appellant's punishment in Cause No. 13-11-9140 at 20 years confinement in the Institutional Division of the Texas Department of Criminal Justice; in Cause No. 13-11-9158 at ten (10) years confinement in the Institutional Division of the Texas Department of Criminal Justice; and in Cause No. 13-11-9159 at five (5) years confinement in the Institutional Division of the Texas Department of Criminal Justice. The sentences all run concurrently.

## APPELLANT'S ISSUES PRESENTED

## APPELLANT'S ISSUE NO. ONE

**THE TRIAL COURT ERRED BY DENYING APPELLANT'S REQUEST FOR JURY INSTRUCTION ON SELF-DEFENSE BECAUSE APPELLANT PLED "NOT GUILTY" WHEN TRIAL BEGAN.**

## APPELLANT'S ISSUE NO. TWO

## THE EVIDENCE IS INSUFFICIENT TO SHOW THAT APPELLANT KNEW JASON McCARRELL WAS A PUBLIC SERVANT WHEN SHOOTING AT HIM.

## STATEMENT OF FACTS

On October 5, 2013, appellant participated in various festivities including a fishing tournament (R. Vol. 5, p. 124) and an outdoor festivity in Victoria. During that time, he consumed beer (R. Vol. 5, p. 127), vodka-soaked Gummy Bears (R. Vol. 5, p. 74), and LSD (R. Vol. 5, pp. 208-210). In the evening, he ended up at the home of Adam Twardowski, a neighbor (R. Vol. 5, pp. 136-141). While there, appellant called a Twardowski child an ugly name and was told to leave. Appellant went to his pickup truck, obtained a pistol and fired shots at the house (R. Vol. 5, pp. 142-148). Michael Cornwell, a guest, attempted to take the pistol from appellant and ended up in a struggle with him (R. Vol. 5, pp. 146, 147). The pistol was fired by appellant near Cornwell's head and the bullet passed through the pickup roof (R. Vol. 5, pp. 55-57). While Cornwell was trying to take the pistol, appellant inflicted a number of bites on Cornwell's arm (R. Vol. 5, p. 58). Cornwell succeeded in getting the pistol when

3

Twardowski intervened and struck appellant twice in the face with his fist (R. Vol. 5, pp. 55, 56). Appellant was aware that the police were being called and he cursed Cornwell for calling them (R. Vol. 5, p. 66). Appellant then drove off in his pickup toward his residence and ended up running the pickup into the ditch near his driveway (R. Vol. 5, p. 183). The Hill residence was 1,228 feet from the Twardowski residence and the distance from Twardowski's driveway to the Hill driveway was 1,435 feet (State's Exhibit 8). Both of these residences were located on County Road 313 East (State's Exhibit 8).

Valerie Twardowski, Adam's wife, called 911 and reported what had happened and asked for assistance (R. Vol. 5, p. 145). While she was talking to 911, a shot was reported from the direction of the Hill residence (R. Vol. 5, p. 148).

Deputy Jason McCarrell, of the Jackson County Sheriff's Department, was dispatched to the scene (R. Vol. 4, p. 23). After turning onto County Road 313 East, he continued past the Hill residence and realized that he was on the wrong side of the residence and turned and came back to the Twardowski residence (R. Vol. 4, pp. 30, 31). He had been driving with his emergency

4

lights on until he turned onto County Road 313, at which time he turned them off (R. Vol. 4, p. 32). When he arrived at the Twardowski driveway, four adults came out of the house and talked with him and gave him information about what had occurred (R. Vol. 4, p. 35). As McCarrell finished talking to them, Deputy Carlos Sertuche pulled in behind him (R. Vol. 4, p. 36). McCarrell and Sertuche then proceeded down the road toward the Hill residence using thermal imagers to look for appellant (R. Vol. 4, pp. 38, 39). As they proceeded down the road toward appellant's driveway, both deputies had their high-beam headlights on and their take-down lights on (R. Vol. 4, pp. 43, 44). They located Hill's pickup truck just before the entry to the Hill residence driveway (R. Vol. 4, pp. 39, 40). While on the way to Hill's driveway, McCarrell had spotted a full-grown man walking around the edge of the driveway to the east of the house (R. Vol. 4, p. 40). He continued to watch the individual he had seen, got out of his car and checked the wrecked pickup truck to see if anybody was in it, and then he and Sertuche drove into the Hill driveway toward the house (R. Vol. 4, pp. 40, 41).

As McCarrell proceeded down the driveway, he was able to see an individual he believed to be Charles Hill standing in the front yard holding a rifle (R. Vol. 4, p. 42). As soon as he saw this individual, he stopped his car, turned his lights off and grabbed his rifle and got out of the car (R. Vol. 4, pp. 42, 43). In driving from the Twardowski residence all the way to the point that he stopped in the Hill driveway, McCarrell had on his high-beam headlights and take-down lights, which were white LED lights integrated into the light bar and are very bright, brighter than just normal headlights (R. Vol. 4, p. 43). Sertuche was about 20 to 30 yards behind McCarrell and also had his LED take-down lights on until they stopped (R. Vol. 4, p. 44). The vehicles at the Twardowski residence did not have take-down lights on them (R. Vol. 4, p. 44). When Sertuche stopped behind McCarrell, he turned off all of his lights except his parking lights (R. Vol. 4, pp. 44, 45). Using his thermal device and staying behind his car for cover, McCarrell could see appellant pointing the rifle directly at him or holding it in such a manner as he appeared to be trying to load it or clear a jam (R. Vol. 4, pp. 45-51). McCarrell finally raised up to see appellant again and sees that he is standing there with the

6

rifle pointing directly at him again, he immediately drops down behind the car and less than a half a second later hears appellant fire (R. Vol. 4, p. 54). Being trained to move when fired at, McCarrell moved and took cover behind the engine block and the front wheels of the car, then looked up to find appellant still pointing the rifle directly at him, so he fired three rounds from his rifle at appellant (R. Vol. 4, p. 55). One of the shots struck appellant's rifle, his hand, fingers and arm. State's Exhibit 82, the video recreation, reflects that the trajectory of the bullet striking the rifle and appellant's arm and hand in which it did could only happen when the rifle was pointed directly at the place from where the shot was fired. This and other exhibits show reflective insignia on McCarrell's vehicle showing that it was a police car.

After the shooting, Officers Sertuche and McCarrell were leaving the scene in Sertuche's car when Officer Merritt arrived. Merritt drove past them and pulled up behind McCarrell's car (R. Vol. 4, p. 181). When they could finally contact him, Merritt was told he should leave because appellant had a night-sight device. Merritt chose to stay and felt that he was hidden well behind his car (R. Vol.

7

4, p. 181). Merritt testified that from where he was located he could see the whole front yard and could clearly see the Hill house. When he heard groaning from the house and appellant finally came out of the house and approached the cars. Merritt then turned his flashlight on as appellant approached him. Appellant was cursing the police as he approached (R. Vol. 4, pp. 181-195). Appellant was finally secured and then turned over to medics.

## APPELLANT'S ISSUE NO. ONE (RESTATED)

**THE TRIAL COURT ERRED BY DENYING APPELLANT'S REQUEST FOR JURY INSTRUCTION ON SELF-DEFENSE BECAUSE APPELLANT PLED "NOT GUILTY" WHEN TRIAL BEGAN.**

## SUMMARY OF THE ARGUMENT

It appears that appellant misstates the record when he indicates to this Court that the trial court denied appellant's request for a charge on self-defense merely because he pled "not guilty" at the beginning of the trial. In reality the record shows that the court's ruling stated "The law is also clear that if you want to assert your right to self-defense, you must first admit the elements of the offense that has been charged. The defendant has pled not guilty to all of the elements of the offense as charged and therefore has not

8

qualified himself to claim the right to self-defense." (R. Vol. 7, p. 9).

Therefore, appellant's argument that the trial court denied him a charge on the issue of self-defense merely because he pled not guilty is both misleading and untrue.

Also, even if that in actuality was what the trial judge did, it is really immaterial if he ruled correctly in denying the charge on self-defense because it wasn't raised. In this case, it simply was not raised and the trial judge was correct.

## ARGUMENT AND AUTHORITIES

In **Calloway v. State**, 43 S.W.2d 645 (Tex.Crim.App. 1988), the court pointed out:

> "Further, it is well-established that the mere fact that a correct ruling is given for the wrong reason will not result in a reversal. If the decision is correct on any theory of law applicable to the case it will not be disturbed. *Miles v. State,* 488 S.W.2d 790 (Tex.Cr.App.1972). See also *Parsons v. State,* 271 S.W.2d 643 (Tex.Cr.App.1954); *Moreno v. State,* 341 S.W.2d 455 (Tex.Cr.App.1960); *Venable v. State,* 397 S.W.2d 231 (Tex.Cr.App.1966), *cert. den.,* 384 U.S. 266, 86 S.Ct. 1477, 16 L.Ed.2d 525; *Smith v. State,* 475 S.W.2d 238 (Tex.Cr.App.1971); *O'Neal v. State,* 491 S.W.2d 130 (Tex.Cr.App.1973); 5 C.J.S., Appeal and Error, § 1464(1), PP. 654–57." (43 S.W.2 645, 651, 652).

Also, Rule 44.2, Texas Rules of Appellate Procedure, provides that any error other than constitutional error which is a defect, irregularity, or variance and does not affect substantial rights must be disregarded.  If the court ruled correctly, it certainly did not affect any substantial rights even if he had simply ruled that a not guilty plea barred a charge on self-defense.

Appellant does not really set forth any facts, or refer to the record to any evidence or testimony that raises the issue of self-defense.  It was aptly pointed more recently in **Ex parte Nailor,** 149 S.W.3d 125 (Tex.Crim.App. 2004), that "A defendant is entitled to an instruction on the law of self-defense if there is some evidence he intended to use force against another and he did use force, but he did so only because he reasonably believed it was necessary to prevent the other's use of unlawful force."  (149 S.W.3d 125, 133). In an interview with Ranger Bradley Freeman on October 6, 2013 appellant told the Ranger that when a car stopped in his driveway he got his 270 and shot in the air."  That is clearly not evidence that he used force against another only because he reasonably believed it was necessary to prevent the other's use of unlawful force, it was

merely a denial of an element of the charge. Since appellant admits that to raise the issue of self-defense appellant must admit to committing the offense and then offer self-defense as justification and completely fails to point to any place in this record where there is any evidence that appellant acted in self-defense presents absolutely nothing for review. Apparently appellant is simply relying upon the fact that the way he interprets the judge's ruling on the issue of self-defense, which is only part of what the judge said, constitutes error. The above-cited authorities clearly show that this point of error has no merit and should be overruled.

## APPELLANT'S ISSUE NO. TWO (RESTATED)

**THE EVIDENCE IS INSUFFICIENT TO SHOW THAT APPELLANT KNEW JASON McCARRELL WAS A PUBLIC SERVANT WHEN SHOOTING AT HIM.**

## SUMMARY OF THE ARGUMENT

Where an individual: (1) engaged in conduct likely to bring police intervention; (2) knew police had been called; (3) was in position in his front yard to see two well-marked and well-illuminated police cars come down a road and turn into his driveway; and (4) saw the two cars drive toward his house and stop, there is ample

evidence from which a rational jury could find, beyond a reasonable doubt, that he knew the drivers of the cars were police officers. Therefore, there is ample evidence from which a rational jury could conclude that appellant knew he was firing at a police officer when he fired his rifle.

## ARGUMENT AND AUTHORITIES

The proper standard for review of an issue of insufficiency of the evidence is set forth in **Brooks v. State**, 323 S.W.3d 893 (Tex.Crim.App. 2010), where the court stated:

> "As the Court with final appellate jurisdiction in this State, we decide that the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." (323 S.W.3d 893, 913).

Elaboration upon this standard is found in **Kiffe v. State**, 361 S.W.3d 104 (Tex.App.-Houston [1st Dist.] 2012), where that court said:

> "An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007) (citing *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex.Crim.App.2007)). In

12

viewing the record, direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton,* 235 S.W.3d at 778. An appellate court also defers to the factfinder's evaluation of the credibility and weight of the evidence. *See Williams,* 235 S.W.3d at 750." (361 S.W.3d 104, 108).

Since appellant engaged in conduct such as firing a pistol at a house and almost shooting an individual in the head with a pistol and then firing a rifle at their house from his residence nearby where a normal person would know that law enforcement officers would respond and investigate, and he was aware that they had been called, he should certainly expect that law enforcement officers would arrive in his driveway. First of all, before the officers got there, appellant was near his house with a rifle and ammunition at a place near his house where he could observe two automobiles on the road approaching his driveway and turning into the driveway with their take-down lights and high-beam headlights on and with reflective markings on both vehicles showing they were police vehicles, especially since the second vehicle was approximately 20 yards

13

behind the first and illuminating it with his lights. Further, with appellant aiming a rifle at the officer in the front vehicle, it is perfectly obvious that he could see the officer in the front car even when he turned his headlights and take-down lights off. Under those conditions appellant would recognize these approaching vehicles as law enforcement officers. It must be remembered that appellant was sighted near his residence collecting his rifle and ammunition out in front of his house, which was 135 yards from the roadway known as 313 East. In that position, and knowing law enforcement had been called by reason of his actions, appellant in all probability saw Deputy McCarrell passing by the Twardowski house and the Hill residence on 313 East and turning around and driving back past it again to the Twardowski house in an automobile that was plainly a police vehicle with reflective markings on it, using it's high-beam headlights and it's take-down lights. All of this took place in plain view as shown by State's Exhibit 4 which shows an open field between the Hill residence and the Twardowski residence, with the road being only 135 yards from appellant's location. Shortly after that Deputy McCarrell, followed by Deputy Sertuche, also in a police

14

vehicle, left the Twardowski residence and drove down 313 East with Sertuche following and illuminating McCarrell's vehicle with his headlights and his take-down lights for some 1,435 feet to the driveway into the Hill residence. During this drive, Deputy McCarrell could see appellant walking around in front of the Hill residence. Then these two vehicles turned into the Hill driveway and travelled some 93 yards where they stopped 83 yards from the Hill residence, both officers having their bright headlights and take-down lights on during this entire trip, all the while with McCarrell's car was being illuminated from behind and both cars having reflective markings on them showing that they were police cars. When they stopped, both automobiles were darkened by turning off their headlights and the overhead lights because appellant had been spotted pointing a rifle at McCarrell with such accuracy that McCarrell felt appellant must have night-vision equipment. In addition to the illumination provided by these two automobiles as they approached the Hill residence coming down the driveway, there was a light at the corner of the driveway where the driveway turned toward the house.

15

The circumstances that also should be considered are that Officer David Merritt arrived at the scene after the shots were fired and as Officers McCarrell and Sertuche were leaving. Merritt parked his car behind McCarrell's car and hid behind the car away from someone whom he knew was shooting at officers. Officer Merritt heard groans coming from the direction he thought was in the house. Shortly thereafter, appellant came out and approached the cars. Merritt said that he could see appellant and see the house and then when appellant got close he turned on his flashlight. It is obvious that under those circumstances Merritt did not have his car lights on or his emergency lights on. However, when appellant was interviewed by Ranger Freeman on October 6, 2013, he made statements about knowing that Merritt was a police officer and he was in a cop car that was white and like the cop car in Jackson County. He stated, "But I knew it was a cop and that's why I walked out there to them." Obviously, if he knew that Merritt's car was a cop car, he had to be able to see the car in front of it, therefore knowing that McCarrell's car was also a cop car.

16

When all of the evidence, including the circumstantial evidence, is considered in this case, there is clearly sufficient evidence for a reasonable finder of fact to conclude that appellant knew that the automobile which he fired at was a police vehicle. Therefore, it is respectfully submitted, that, as pointed out in **Kiffe**, supra, "the necessary inferences are reasonably based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." The circumstantial and direct evidence when considered in its totality is clearly sufficient to establish guilt and when viewed in the light most favorable to the verdict is sufficient to support each element of the offense charged against appellant in this case, including his knowledge that he was firing at a police officer.

## CONCLUSION

**WHEREFORE, PREMISES CONSIDERED**, it is respectfully submitted that the evidence in this cause is sufficient and the judgment of the trial court should be in all things affirmed.

Respectfully submitted,

Robert E. Bell
District Attorney
State Bar Card No. 02086200
Jackson County Courthouse
115 W. Main Street
Edna, Texas  77957


/s/ Jim Vollers
Jim Vollers
State Bar Card No. 20609000
2201 Westover Road
Austin, Texas  78703

**ATTORNEYS FOR THE STATE**


**CERTIFICATE OF SERVICE**

I hereby certify that on this the 15th day of October, 2015, a true and correct copy of the foregoing was served electronically through the electronic filing manager on the party listed below:

Hon. W. A. (Bill) White, Attorney at Law, P.O. Box 7422, Victoria, Texas 77903, Attorney for Appellant, at lawbill0994@att.net.

Robert E. Bell, District Attorney, Jackson County Courthouse, 115 West Main Street, Edna, Texas 77957, Attorney for Appellee, at ef_mitchell@yahoo.com.

Honorable Juergen "Skipper" Koetter, District Judge, 24th Judicial District Court, Jackson County Courthouse, 115 West Main Street, Edna, Texas 77957, Trial Judge, at koetter@cscd.net.

18

If the email of the party or attorney to be served was not on file with the electronic filing manager, the pleading was served by email.

/s/ Jim Vollers
Jim Vollers

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this document contains 4,578 words (counting all parts of the document).

/s/ Jim Vollers

Jim Vollers
2201 Westover Rd.
Austin, Texas 78703
(512) 478-6846
SBN 20609000
JimVollers@att.net

**COUNSEL OF RECORD**
