**SCHOENBERG v. FORREST.**

No. 12041.

Court of Civil Appeals of Texas.
San Antonio.

March 1, 1950.

Rehearing Denied April 5, 1950.

Forrest A. Bennett, San Antonio, William C. Davis, San Antonio, for appellant.

Palmer & Lemons, San Antonio, Alfred M. Scott, Austin, for appellee.

BROETER, Justice.

This is a case in which Jack Forrest sued Isidore Schoenberg for damages on account of an alleged breach of a written sales agency contract executed by them of date December 30, 1947. By the terms of such contract Jack Forrest was designated sales agent for a jewelry item described as "Collar Bobs", for a period of twenty years, on a commission basis, over a territory composed of several states and portions of states, and substantially comprising the eastern half of the United States. The paragraphs of such contract that are material for the disposition of this appeal are the following:

"1. Said Isidore Schoenberg gives and grants unto Jack Forrest a general sales agency for the following territory, the States of: (Here follows a list of the states and territory, roughly comprising the eastern part of the United States) on the product of the Collar Bobs Company, known as Collar Bobs and said Jack Forrest agrees to act as the general sales agency for the product above described in said territory for the period of twenty (20) years from the date of this agreement.

"2. That said Jack Forrest will organize, employ and hire salesmen and shall from time to time increase sales force in said territory and promote the further sales of the product in keeping with the demands of such territory, and that said salesmen so employed and hired shall be employees of Jack Forrest and not the Collar Bobs Company.

"3. Said Jack Forrest covenants and agrees to exert his best efforts to organize such sales force throughout the aforesaid territory and to sell the said product throughout the aforesaid territory during the period covered by this agreement and he further covenants and agrees that he will devote the whole of his time, attention, and energies to the performance of such duties, and that he will not be connected

with or concerned in any other business or pursuit whatsoever during the term of years above set out.

"4. Said Isidore Schoenberg covenants and agrees that said Collar Bobs Company will pay to said Jack Forrest a commission of thirty per cent (30%) on all sales in said territory, commission to be payable in San Antonio, Texas, at the close of each fiscal month. In such places where the said Jack Forrest has salesmen he shall receive the difference in commission between 30% and such portion as he may direct to be paid said salesmen. * * *

"7. It is further understood and agreed by and between the parties hereto that if said Jack Forrest is not properly promoting the sales of Collar Bobs with reasonable diligence and effort and the full devotion of his time thereto, then after written notice by Isidore Schoenberg to that effect Jack Forrest shall have a reasonable length of time to correct this breach. Upon failure to correct same within such reasonable time then Isidore Schoenberg shall have the option of declaring this contract null and void.

"8. It is further understood by and between the parties hereto that all expenses of Jack Forrest and his salesmen incurred for traveling and otherwise pertaining to and in connection with this contract and the business of Collar Bobs shall be paid by such salesmen and Jack Forrest without any liability to him for same from Isidore Schoenberg or the Collar Bobs Company."

Plaintiff claimed he had organized and employed salesmen, had sold Collar Bobs, had used his best efforts to employ salesmen, and in all respects had complied with the obligations imposed upon him under such contract; that defendant had terminated said contract to plaintiff's damage. Defendant claimed that plaintiff had failed to employ salesmen and failed to comply with such contract; that he had notified plaintiff of his failure and given him reasonable time to correct such failure but he had not done so and therefore defendant terminated said contract.

The trial was by the court with the aid of a jury, and the cause was submitted to the jury upon special issues. Upon the answers of the jury that plaintiff had complied with all his obligations under the contract and that plaintiff suffered $10,000 in damages as a result of the termination thereof by the defendant, the court rendered judgment in favor of plaintiff for the sum of $10,000. From this judgment defendant below has appealed. Appellant groups his points of appeal on which he asks that this cause be reversed and rendered in one group, and the points on which he asks that this case be reversed and remanded in another group, and, in making disposition of this case, we will consider such points as grouped.

Appellee makes severe criticism of the form of appellant's brief. However, he does not present any motion to this Court asking that appellant's brief be stricken, but has filed a brief in reply thereto. Under some of the counter-points raised by appellee there are statements that certain points raised by appellant should not be considered by the Court because they are not properly briefed. If it be proper for this Court to consider any such statements this Court will do so in passing on the counter-points.

■ Appellant's Point I recites that the trial court erred in overruling his special exception to paragraph IV of plaintiff's petition, on the ground that said paragraph was vague and indefinite and did not name the salesmen employed nor the methods used to promote the sale of Collar Bobs and that by virtue of such failure plaintiff was allowed to introduce testimony which otherwise would not have been admissible.

We believe the ruling of the court in overruling this exception is correct. Paragraph IV of plaintiff's petition in substance recites that the plaintiff, in pursuance of his obligation under the contract, did devote all of his time and energies in the promotion of the defendant's product in the territory described; that he employed salesmen and promoted sales in keeping with the demands of such territory; that he traveled at his own expense to many cities and states for the purpose of promoting sales; that in the promotion of

said product plaintiff was required to and did expend all of his time, efforts and energies in acquainting the market and outlets with such product; that to introduce and promote such product and create a demand therefor he sold such product to many leading department stores in the United States, and he named the stores to which he had sold the product and their locations. Appellant's Point No. I is overruled.

By Point II appellant contends that the court erred in failing to grant his motion for an instructed verdict at the close of the testimony, because the evidence shows that the plaintiff had breached the contract and because there was no evidence on which the court could submit an issue of damages to the jury. We believe that the ruling of the court in refusing this motion on the grounds mentioned was correct. There was some evidence to the effect that the plaintiff had not employed any salesmen during some of the first months of the year 1948, but the plaintiff testified that he had used his best efforts to employ such salesmen and did have salesmen working, and that he had sold Collar Bobs all during that year and had received commissions from the defendant on his sales. The evidence also shows that the plaintiff earned in commissions substantial sums of money during the eight months that he worked under this contract. We quote a portion of plaintiff's testimony, as follows:

"Q. Mr. Forrest, from January 1st through August, 1948, I will ask you to tell me first what were your commissions during that period of time by the month? A. Each month?

"Q. Yes. A. My commissions in January were $1,458.17. My commissions for February were $1,150.90. My commissions for March, $1,931.69. April, $1,218.-90. May, $1,809.39. June, $951.62. July, $752.22. August, $309.76, and there was $38.00 in this advertising that I paid for that was charged off to my account, which gave me a net $271.76."

He also testified as follows:

"Q. Well, you have already testified about the commissions that you made. Now, I want you to testify what commissions each of your salesmen made for each month during that period for themselves. A. For themselves?

"Q. Yes. A. Well, I don't have it figured here, but I will give you the volume of their sales and it will be twenty per cent of that.

"Q. All right, give us the volume of their sales. A. In January, Ver Steeg's volume was $1,634.00 plus $229.80. That latter amount of $229.80 was a carry over from December. Jackson $174.65. Cole, $113.50. Dillion, $932.25. Brown $9.00. The month of February Jackson, $93.25. Brown, $42.00. Cole, $64.00. Dillon, $15.-31. Ver Steeg, $947.75. In March, Dillon, $1,418.10, Ver Steeg, $837.10. Jackson, $139.22. In April, Dillon, $2,158.65. Ver Steeg, $573.05. Jackson, $155.00. In May, Dillon, $1,870.71. Ver Steeg, $551.25. In June, Dillon's sales were $831.75. Ver Steeg, $583.20. Cole, $81.00. Arnston, $631.75. In July, Ver Steeg was $225.00. Dillon didn't do anything at all. He had a net deficit of $1.09. In August, Ver Steeg did $223.50. Dillon did $25.40, and Bagby, $43.00.

"Q. I will ask you now whether or not in your opinion as sales agent for Collar-Bobs Company you had by August of 1948 all of the salesmen that the territory that you had demanded? A. I think so, yes sir."

And, as to his earnings under the contract of April 10, 1947, plaintiff testified:

"Q. What did you earn as commissions under that first contract? A. By month?

"Q. Yes. A. This is a report or statement—

"Mr. Davis: We object to the witness testifying to what that is he has there. If he wants to use it to testify from he may do it, but it has not been introduced we would like to see it first.

"Q. Just testify from your own knowledge. A. Month by month?

"Q. Yes. A. May 3rd, $390.20, May 5th, $67.91. That was an item that was forgotten on the month of May. June 6th, $907.26. June 30th, $1,473.98. August 8th, $1,179.10. September 10th, $562.50. September 19th, $80.47. October 6th, $626.85 October 8th, $153.55. November 5th, $1,-

869.66. December 30th, $3,343.63. Or a total for that period of $10,655.11.

"Q. How many months did that cover? A. approximately eight months,—May through December.

"Q. Now, Mr. Forrest, did you continue under that contract? A. No, sir, I did not."

There is other evidence in the record tending to establish that appellee did not breach the contract and that he suffered damages as a result of the termination thereof by the defendant. We cannot say, as a matter of law, therefore, that the evidence shows plaintiff breached the contract and that there was no evidence on which an issue of damages should be submitted to the jury. Said point is overruled.

Point III recites that the trial court erred in failing to grant defendant's request for an instructed verdict at the close of all evidence, because the evidence showed that plaintiff had breached the contract and therefore could not collect any damages on any breach thereof by defendant We overrule this point. As recited in our ruling on Point II, we cannot hold as a matter of law that the evidence showed that the plaintiff had breached the contract.

By Point IV appellant contends that the trial court erred in failing to direct a verdict in favor of the defendant because the evidence submitted by the plaintiff showed that this undertaking in which he was engaged was a new and unestablished venture for the promotion of a new fad not known to the buying public, and therefore there was no evidence upon which the court could submit an issue as to any measure of damages that might have accrued to the plaintiff by virtue of the termination of the contract, and said point further says that the evidence introduced was opinion evidence given by the plaintiff. This point is not well taken. The Collar Bobs Company had been in the business of selling Collar Bobs for many months before December 30, 1947, which was the date of the contract for breach of which this suit was filed. The plaintiff, Jack Forrest, as a jobber, had first sold these Collar Bobs for the defendant for several months prior to April 10, 1947, when he entered into a written contract appointing him sales agent for such product over the entire United States, and he operated under such contract until December 30, 1947, when the contract involved in this suit was executed. The evidence shows there were many sales of Collar Bobs consummated by the plaintiff as a jobber and under the first written contract, and that he had earned substantial commissions during such time. The sale of Collar Bobs on December 30, 1947, was an established business. The contract on which this suit is founded was to organize a sales force and sell an item of jewelry known as Collar Bobs. Such jewelry had been and was being manufactured and sold when this agreement was entered into. Profits and commissions had been made by agents on the sales of such product.

In the case of Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1098, Judge Sharp of the Supreme Court said: "The rule as announced by the decisions of the courts of this state is summarized in 13 Texas Jurisprudence, p. 215, § 144, as follows: 'In order that a recovery may be had on account of loss of profits, the amount of the loss must be shown by competent evidence with reasonable certainty. Where the business is shown to have been already established and making a profit at the time when the contract was breached or the tort committed, such pre-existing profit, together with other facts and circumstances, may indicate with reasonable certainty the amount of profits lost. It is permissible to show the amount of business done by the plaintiff in a corresponding period of time not too remote, and the business during the time for which recovery is sought. Furthermore, in calculating the plaintiff's loss, it is proper to consider the normal increase in business which might have been expected in the light of past development and existing conditions.' "

In that case Judge Sharp also said: "Where, as here, it is shown that the business was a going concern, and was making a profit, when the contract was breached, such pre-existing profit, together

with other facts and circumstances, may be considered in arriving at a just estimate of the amount of profit which would have been made if plaintiff had not breached its contract. Under the facts of this case it cannot be said, as a matter of law, that defendants were not entitled to a recovery for the loss of their profits. The evidence presented a question of fact to be determined. Jones v. George, 61 Tex. 345, 347, 48 Am.Rep. 280; National Bank of Cleburne v. M. M. Pittman Roller Mill, Tex.Com.App., 265 S.W. 1024, 36 A.L.R. 1405; 13 Tex.Jur. p. 207, § 108; Blagen v. Thompson, 23 Or. 239, 31 P. 647, 18 L.R.A. 315; Lanahan v. Heaver, 79 Md. 413, 29 A. 1036."

Appellant's fourth point is overruled.

By Point VII appellant contends that the court erred in failing to grant his motion for judgment non obstante veredicto, because the evidence showed without dispute that appellee had breached the contract in January, 1948, and up until appellant terminated the same on account of appellee's failure to fulfill the terms of paragraph 2 of said contract. The ruling of the court in refusing to grant this motion is correct. We have in passing on Point II of appellant's brief referred to the evidence and given some reasons for holding that we cannot hold as a matter of law that appellee had breached the contract. By paragraph 2 of the contract appellee agreed to organize, employ and hire salesmen and increase sales force and promote further sales of the product in keeping with the demands of the territory allotted to him, and by paragraph 3 he agreed to exert his best efforts to organize such sales force and to sell such product throughout the territory. The evidence quoted under Point II above, and the further evidence in the record to the effect that appellee in his efforts had visited several states and conferred with prospective salesmen in an effort to employ them, and his testimony to the effect that he had employed a number of salesmen, is sufficient to raise fact issues to be determined by the jury. Point VII is overruled.

The foregoing rulings dispose of all the points raised by appellant upon which he asks that this case be reversed and rendered. We will now consider the points raised by appellant on which he asks that this cause be reversed and remanded. By Point V the appellant contends that the "court erred in submitting to the jury Special Issue Number 1, which involved a question of law and the question of a written contract, when, under the pleadings, there were no allegations as to any ambiguity or fraud in the preparation and drawing up of the contract, and, in the absence of such allegations and proof, there could be no fact issue to be determined by the jury. The submission of Special Issue No. 1 of necessity required the jury to speculate as to the intentions, contemplations and the innermost thoughts of the parties to the contract. Said contract, if it required any construction at all, should have been construed as a matter of law by the Court and not by the jury." Error was assigned in appellant's motion for a new trial in substantially the same words as this point.

Much criticism is made by appellee to this point as framed. Appellee contends that under Rule 274, Texas Rules of Civil Procedure, it should not be considered by this Court. We believe that the point is sufficient to warrant this Court in considering whether or not Special Issue No. 1, as submitted to the jury, is a proper issue.

Special Issue No. 1, as submitted by the court to the jury, reads as follows: "Do you find from a preponderance of the evidence that during the period from December 30, 1947, to August 25, 1948, the plaintiff, Jack Forrest, fulfilled his obligations to the defendant under the terms of and in compliance with said contract?" The transcript shows the appellant made numerous objections and exceptions to Special Issue No. 1. Among such objections are the following: "Defendant objects and excepts to Question No. 1 because it is duplicitous in that it inquires: '(a) whether or not the Plaintiff fulfilled his obligation to the Defendant. (b) It inquires whether or not the plaintiff fulfilled his obligation in compliance with the contract. (c) It inquires of the jury whether

or not he fulfilled his obligations under the terms of the contract. (d) If this issue should be submitted at all, which the Defendant prays it should be which hereinafter will be shown, then the questions should be separate and an inquiry be made first as to whether or not Jack Forrest fulfilled his obligation to the Defendant, and then another question whether or not he fulfilled his obligation to the Defendant under the terms of the contract, and next, whether he fulfilled the terms in compliance with the contract. * * * (h) The Defendant objects and excepts to question No. 1 because it is submitting to the jury a question of law in that it involves the construction of a written contract when under the pleadings there are no allegations as to any ambiguity or fraud in the preparation and drawing as shown by the contract, and in the absence of such allegation there could be no fact issue as to what the terms were, and as to what the obligations were regarding either party, in other words, the contract speaks for itself, and it is upon the Court instead of the jury to construe this contract, and as stated, it submits a question of law to the jury which is highly prejudicial to the Defendant and should never be done.' " There were several other objections and exceptions made to Special Issue No. 1, not quoted above. The objections were presented to the court and by him overruled, and exception to the ruling was preserved.

■ We believe that such issue is duplicitous and multifarious; that it submits to the jury a mixed question of law and fact; that it does not ask the jury to find any particular fact, that it requires the jury to determine whether or not in their opinion the plaintiff fulfilled his obligation under the terms of the contract in compliance with such contract; and that it asks the jury to find whether or not the plaintiff had complied with the several obligations imposed upon him in the contract when it is the duty of the jury to pass upon questions of fact and such issues of fact should not request a finding on more than one fact.

This issue turns the jury loose, so to speak, and asks them to determine from the contract what obligations were imposed thereby upon the plaintiff and whether or not plaintiff had fulfilled them, when they should only be asked to determine whether or not they found, from a preponderance of the evidence, that plaintiff had performed a particular duty in issue. The submission of this issue was error under the ruling in Hewitt v. Buchanan, Tex. Civ.App., 4 S.W.2d 169, and Totten v. Houghton, Tex.Civ.App., 2 S.W.2d 530. Plaintiff was obligated under the contract to perform several duties. He may have performed some and he may have failed to perform others. Separate fact issues should have been submitted requesting the jury to find whether the plaintiff had performed each particular duty, the performance of which was in issue.

■ We believe that the objections made by defendant to this special issue were sufficient to call the court's attention to the defects in this special issue. This being a controlling issue on which plaintiff's right to recovery was based, it was plaintiff's duty to request that a correct special issue be submitted to the jury. If the issue was incorrect, it was only necessary that appellant make an objection thereto sufficiently clear to call the court's attention to the incorrectness of the same. Texas & N. O. R. Co. v. Barham, Tex.Civ. App., 204 S.W.2d 209, par. 7–9, and cases there cited.

Appellant's Point V is sustained.

■■ Inasmuch as this case will be reversed and remanded on account of the error above mentioned, this Court will not pass on the additional sixteen points relied on by appellant for reversal, to do so would unduly lengthen this opinion. Many of the assigned errors may not again arise. We do feel that we should observe that Special Issue No. 2 of the court's charge is incorrect because same requires the jury to refer to the contract and determine what was contemplated by the parties. Such issue and issues numbered 3 and 4 are submitted conditionally by a clause which should not be used. Appellant is entitled to have his defense submitted affirmatively. New Nueces Hotel Co. v. Sorenson, 124 Tex. 175, 76 S.W.2d 488.

Issue No. 2 and the conditional clause are as follows:

"If you have answered Question No. 1 'no', then answer the following question; but if you have answered Question No. 1 'yes' then you need not answer the following question.

"Question No. 2: Do you find from a preponderance of the evidence that plaintiff, Jack Forrest, prior to July 14, 1948, failed to properly promote the sales of collar-bobs with reasonable diligence and effort and full devotion of his time thereto, as contemplated by the parties to the contract?

"Answer 'yes' or 'no'."

 The jury should only be requested to find the facts, and on these facts the court is required to determine whether the appellee failed to comply with his contractual obligations. By referring to the terms of the contract it is apparent that appellant is entitled to terminate the same upon appellee's failure to perform either of the obligations placed upon him thereby, provided appellant proves, by a preponderance of the evidence, that appellee (1) did fail to perform a particular act; (2) that appellant notified appellee in writing of his failure; (3) that a reasonable time was given appellee to correct said failure; (4) that appellee failed to correct such failure; and (5) that on account of such failure the appellant terminated the contract. No issues are submitted on the last two requirements. The issues do not affirmatively submit appellant's defense. We are not determining that any of the points claiming error on account of the submission of Issue No. 2 and the conditional clause are sustained. Appellee, by counter-points and by argument, claims such points as framed do not meet the requirements of our briefing rules; that such points are not based on any proper objections made by appellant to such issues; that they are not properly briefed, and by reason thereof same should not be considered by this Court. We will not pass on such contentions but will refer the parties hereto to Page 397 of Vernon's Texas Rules of Civil Procedure by Franki, wherein Judge James P. Alexander ably discusses the rules that should be followed

in briefing and presenting a case to the Court of Civil Appeals. We might also observe that it was appellant's duty to object to the court's charge for reasons specifically and distinctly set out and to submit to the court proper affirmative issues covering his defense. 41 Tex.Jur., par. 242. If the proper issues are not then submitted by the Court to the jury exception should be reserved to the court's failure to submit same and the error asigned thereon can be reviewed by this Court. Appellant did request some special issues, the general form of which is disclosed by the following: "Do you find from a preponderance of the evidence that the Plaintiff, Jack Forrest, failed to comply with the terms of the contract, signed on December 30th, 1947, during the month of January, 1948, by failing to comply with the Paragraph Numbered 2 of said contract?"

 This issue and others similar to it are not correct. They are subject to many of the same objections that exist to Issue No. 1 actually submitted by the court, hereinabove mentioned.

For the error pointed out this cause must be reversed and remanded.

Reversed and remanded.