**John Lanham HIGGINBOTHAM et al.,
Appellants,**

v.

**Violet M. O'KEEFFE et al., Appellees.**

No. 6982.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 31, 1960.

Rehearing Denied Nov. 28, 1960.

Cade & Bowlin, Lubbock, Freeman & Curry, Seminole, for appellants.

New & Townes, Denver City, for appellees.

DENTON, Chief Justice.

This is a damage suit brought by Violet M. O'Keeffe, individually and as next friend of her five minor children, against John Lanham Higginbotham, Higginbotham Land and Cattle Company and Higginbotham Bros. Company, which grew out of a three-car collision resulting in the death of William T. O'Keeffe, the husband and father of the plaintiffs. The alleged collisions occurred on January 29, 1959, in Yoakum County, Texas. The wreck involved three vehicles, a Ford driven by the deceased, a Buick driven by appellant John Lanham Higginbotham, and a pickup owned by the El Paso Natural Gas Company. The latter company is not a party to this suit. At the close of the plaintiffs' testimony, the trial court granted a peremptory instruction as to defendant Higginbotham Land and Cattle Company and this defendant is not a party to this appeal.

The case was tried before a jury, and based upon the answers of the jury to the special issues submitted, the trial court rendered judgment for plaintiffs against defendants John Lanham Higginbotham and Higginbotham Bros. Company, jointly and severally. These defendants duly perfected their appeal and bring forward nine points of error.

The trial court submitted special issues inquiring as to the negligence and proximate cause of various acts of both defendant Higginbotham and deceased William T. O'Keeffe which were alleged by the respective parties. The jury found in its verdict: that the defendant Higginbotham was operating his automobile at an excessive rate of speed under the attending circumstances, that such act was negligence, and that such negligence was a proximate cause of the collision resulting in the death of O'Keeffe; that the defendant Higginbotham attempted to pass the vehicle driven by O'Keeffe at a time when he could not do so with safety, that it was negligence, and that it was a proximate cause of the collisions resulting in the death of O'Keeffe; that defendant Higginbotham failed to have his automobile under proper control, that such failure was negligence, and that it was a proximate cause of the collisions and resulting death of O'Keeffe; that defendant Higginbotham failed to apply his brakes in time to avoid the collision, that such failure was negligence, and that it was a proximate cause of the collisions and the resulting death of O'Keeffe; that defendant Higginbotham failed to keep a proper lookout, that such failure was negligence, and that it was a proximate cause of the collisions in question and resulting death of O'Keeffe; that defendant Higginbotham failed to yield the right-of-way to O'Keeffe, that such failure was negligence, and that it was a proximate cause of the collisions; and that defendant Higginbotham was driving his automobile under the influence of intoxicating beverages, that such act was negligence, and it was a proximate cause of the collisions in question; that such act of driving his automobile while under the influence of intoxicating beverages was gross negligence, that such gross negligence was a proximate cause of the collision in question; that the failure of defendant Higginbotham to keep his automobile under proper control was gross negligence, that such gross negligence was a proximate cause of the collisions in question; that defendant Higginbotham's operation of his automobile at an excessive rate of speed was gross negligence, that such gross negligence was a proximate cause of the collisions in question. The jury further found that the deceased O'Keeffe did not drive his automobile on his left side of the road, that the said O'Keeffe did not fail to keep a proper lookout, that O'Keeffe was not subject to spells of unconsciousness on the occasion in question, and that

O'Keeffe did not lean over to his right to the point where he could not see the road ahead of him, and that the collision in question was not an unavoidable accident. The jury awarded his surviving widow damages in the amount of $75,000 and to each of the five minor children a recovery of $15,000, assessing a total of $150,000 damages and the further assessment of $20,000 exemplary damages.

Each of the defendants previously filed a motion for an instructed verdict, and after the verdict was returned the defendants filed a motion for a judgment non obstante veredicto. As previously stated, the defendant Higginbotham Land and Cattle Company was granted a peremptory instruction but these two motions in behalf of the remaining two defendants were overruled. Based on the verdict of the jury the trial court entered a judgment for the plaintiffs for the sum of $150,000 actual damages against defendants John Lanham Higginbotham and Higginbotham Bros. Company, jointly and severally, for the sum of $20,000 exemplary damages against the defendant John Lanham Higginbotham individually.

■ Appellants' first two points of error complain of the trial court's refusal to instruct a verdict for defendants, and its failure to render judgment in the defendants' favor, notwithstanding the verdict. These two points of error deal only with the question of law of "no evidence." Any points of error relating to motions for instructed verdict or motions for judgment notwithstanding the jury's verdict are said to be "no evidence" points of error regardless of the language used in the points of error. " 'No Evidence' and 'Insufficient Evidence' Points of Error," by Justice Robert W. Calvert, 38 Tex.Law Review 361 (1960). The sufficiency of the evidence is therefore not raised by the appellants' first two points of error. It follows that this Court has no jurisdiction to pass on the question of sufficiency of the evidence to support the findings of the jury. In re

King's Estate, 150 Tex. 662, 244 S.W.2d 660; Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164. We must examine the evidence to determine whether there is evidence of probative value which with the reasonable inferences therefrom will support the findings of the jury in answer to special issues submitted. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W. 2d 79, 303 S.W.2d 359; Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497.

In order to make this determination we must briefly review the evidence presented in this rather lengthy trial. Plaintiffs pleaded that the accident occurred on January 29, 1959 at about 12:30 p. m. on Highway 214 approximately six miles north of Denver City, Yoakum County, Texas. The deceased William T. O'Keeffe was driving at a lawful rate of speed in his proper lane in a southerly direction; that at a point 275 feet south of the intersection of Highway 214 and Highway 396 the automobile driven by defendant Higginbotham suddenly crashed into the rear of the O'Keeffe car knocking it into the path of an oncoming vehicle in the east lane thereby causing a head-on collision with the third vehicle, resulting in the death of O'Keeffe. Neither car carried passengers other than the two drivers. Plaintiffs further pleaded that just prior to the initial contact between Higginbotham's Buick and O'Keeffe's Ford, Higginbotham had moved to the left in an effort to pass the O'Keeffe automobile, but seeing the pickup coming from the south Higginbotham cut back to the right and in so doing struck the right rear of the O'Keeffe automobile with the left front of the Buick driven by Higginbotham. It was plaintiffs' contention that this was the impact that knocked the O'Keeffe automobile into the path of the oncoming pickup.

The defendants pleaded that Higginbotham was following several car lengths behind the O'Keeffe car, and did pull slightly to the left in order to pass the O'Keeffe car, but on noticing the oncoming pickup, Higginbotham pulled back into the right lane

behind the O'Keeffe car; that about this time O'Keeffe slumped over or bent over to his right, and as he did so the O'Keeffe car moved to the left and collided with the oncoming pickup. Defendants further pleaded that the O'Keeffe car then swung around and that the rear of the O'Keeffe car struck the left front of the Higginbotham automobile, alleging that the latter impact occurred in the west or right lane of the highway. Thus the pleadings of the defendants are to the effect that Higginbotham had nothing whatsoever to do with causing the collision resulting in the death of O'Keeffe.

Plaintiffs relied on numerous witnesses including a highway patrolman, Jack Sims, who appeared at the scene shortly after the collisions and investigated the movements of the vehicles. He located the points of both impacts by skid marks and debris of dirt and tail light glass. Sims placed one point of impact in the right hand lane for south-bound traffic and the second point of impact in the left hand lane for south-bound traffic was fixed by him to be 37 feet south of the point of the impact in the west lane. These findings along with 37 feet of skid marks made by the defendant's Buick extending north of and to the point of impact in the west lane, and the location of damage to the Ford and Buick resulted in the conclusion of Sims, who had qualified as an expert in this field, that the Buick of Higginbotham had first struck the O'Keeffe Ford as pleaded by plaintiffs. Other witnesses who came on the scene shortly after the collision, substantiated various portions of Sims' testimony pertaining to skid marks, location of debris, and damage to the automobiles.

Defendants on the other hand presented testimony of several witnesses including one Jim Willis, who testified he was driving several hundred yards behind the two vehicles and that he saw the accident. His testimony submitted by deposition was to the effect that Higginbotham did move to the left to pass O'Keeffe but seeing the on-coming pickup Higginbotham reduced his speed and fell behind O'Keeffe. He testified that at this point the Ford moved into the left or east lane and struck the pickup and then bounced into the path of Higginbotham's car. It was his testimony that the Higginbotham car did not strike the Ford as contended by plaintiffs' pleadings and testimony. Other witnesses testified for both parties as to various particulars but an outline of such testimony is unnecessary here. The jury resolved the conflicts of the evidence in favor of plaintiffs, and found numerous acts of defendant John Lanham Higginbotham negligent and a proximate cause of the death of William T. O'Keeffe, while finding O'Keeffe was not negligent in any particular.

Defendants' primary contention is that the plaintiffs' cause of action is based on circumstantial evidence as contrasted to direct evidence presented by the defendants in the testimony of two eye witnesses, John Lanham Higginbotham and Jim Willis. That in comparison with the direct evidence offered by defendants, this circumstantial evidence becomes "no evidence." We can not agree with appellants' contention. As stated in Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, 275:

"It is well settled, moreover, that negligence and causation, like any other ultimate fact, may be established by circumstantial as well as direct evidence. See English v. Miller, Tex.Civ. App., 43 S.W.2d 642 (wr.ref.); Henry v. Publix Theatres Corp., Tex.Civ.App., 25 S.W.2d 695 (wr. ref.). The jury is thus not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded under the provisions of Rule 301, [T.R.C.P.,] therefore, if the record discloses any evidence of probative value which, with inferences that may be properly drawn therefrom, will reasonably support the same."

In determining whether or not the record before us presents evidence of probative value which with the reasonable inferences therefrom will support any of the jury findings, we must approach the question in light of the Supreme Court's admonition regarding questions of "no evidence." Justice Calvert reiterated this admonition with approval of the following language found in Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W.2d 982, 983:

> "Appellate courts are without authority to set aside jury verdicts, particularly on questions of proximate cause in damage suits, upon conflicting facts— the undisputed facts must be ample and clear, and the circumstances most exceptional to justify such action."

Having examined the voluminous statement of facts and reviewed the evidence presented, we conclude that the facts and circumstances established by the evidence and the inferences which can be reasonably drawn therefrom support the jury findings. Appellants' points of error One and Two are therefore overruled.

Appellants next complain of improper jury argument of counsel for plaintiffs to the effect that the testimony of Jim Willis should not be considered by the jury because it was by deposition. Since the decision in Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 was rendered by our Supreme Court, the law in Texas is well settled that before a judgment is reversed because of argument of counsel, two things must appear: the argument must be improper, and it must be such as to cause and probably did cause the rendition of an improper judgment in the case. We must therefore examine the argument complained of in the light of this well settled rule. During the presentation of evidence by the defendants' counsel, plaintiff's counsel objected to the introduction of the deposition of Willis on the ground that Willis was a resident of Lamesa, which was within 100 miles from Plains, Texas, where the trial was being conducted. It being the plaintiffs' position that the deposition should not be admitted unless defendants showed why the witness could not be produced in person. The trial court overruled this objection and the deposition was introduced. Plaintiffs later introduced its cross examination of Willis in the same deposition.

In their closing argument, counsel for plaintiffs did refer to the fact that Willis' testimony was presented by deposition rather than in person. This reference was made several times by appellees' counsel and portions of such argument were as follows:

> "They brought witnesses from Oklahoma. They brought witnesses from Lubbock, and let me tell you they could have had him here from Lamesa, but for the courtroom, but for the evidence, but for the additional cross-examination they chose to go on this paper. Who can tell from the way this has to be submitted, * * *"

And again:

> "I submit to you for shame, for shame to come before a jury with a piece of paper with questions and answers under oath, and the man sitting in Lamesa. They don't want any further examination of that witness. It could not stand up."

Defendants' objections to the argument of appellees' counsel were overruled and they duly took their exceptions. Prior to the closing statements of plaintiffs' counsel, counsel for the defendants made the following remarks concerning witness Jim Willis:

> "He has attempted through the trial of this case, the counsel has, to throw a little *inuendo* about Jim Willis. Now he knows where Jim Willis is, and has known. He objected because I read a deposition, and you heard the argument that I had with him when we took the deposition in his own office in Denver City, and we agreed then that I could

use that then on the trial of this case, and I agreed that he could use it if he wanted to. And yet he raises all of that *inuendo* about it, because it is the only way he can get out of the direct evidence offered in this case."

■ Appellees' contention is that their counsel's argument was not improper because it was invited by the remarks by counsel for appellants. Although we are of the opinion that the remarks of appellees' counsel can be said to be in reply to remarks by appellants' counsel, we are of the further opinion the nature of the remarks complained of are not of such nature as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Aultman v. Dallas Ry. & Terminal Co., supra. We therefore overrule appellants' point of error No. 3.

By their fourth point of error appellants complain of jury misconduct in discussing the illness or disability of the deceased. Seven jurors testified on the hearing for a motion for new trial. After appellants placed the first juror on the witness stand they rested, and the appellees placed the remaining six jurors on as witnesses. The record reveals that the other five jurors were available, but neither party deemed it necessary to interrogate them.

■ On the hearing for the motion for a new trial, one of the jurors testified she brought up the subject of the deceased having had epilepsy and that if the government thought he had it she thought the deceased must have been so afflicted. Another juror spoke up and said in effect that she didn't know about what went on in the Army, implying that people often pretend to have such a disease in order to be discharged. Several other jurors testified the foreman stopped such discussion and admonished the jury to confine its discussion to the evidence. The trial court made no findings of fact but simply overruled the motion for a new trial. Therefore the presumption is that the trial court made such

findings as were necessary to support its order. The effect of the court's order overruling the motion for a new trial was a finding as a matter of fact that the alleged acts of misconduct did not occur. If there be any evidence to support such findings they are binding on this court. Younger Bros., Inc. v. Myers, Tex., 324 S.W.2d 546; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. Since the adoption of the Rules of Civil Procedure, the rule is now well settled that in regard to motions for new trial because of jury misconduct, the party asserting the misconduct has the burden not only of proving by a preponderance of the evidence that such misconduct occurred, but also of proving that such misconduct probably resulted in injury to him. Rule 327, V.A.T.R.; Barrington v. Duncan, supra; Richardson v. Walters, Tex.Civ.App., 311 S.W.2d 268 (no writ history). In our view, appellants failed to discharge the burden of proof and the record supports the trial court's presumed findings that the misconduct complained of did not occur, or if it did that no probable injury resulted.

■ Appellants further contend the trial court charged on the weight of the evidence by charging in effect that there were two separate collisions in this case. In the special issues submitted to the jury, the trial court used the word "collisions" in several such issues when inquiring of certain alleged acts of defendant John Lanham Higginbotham. We can not agree with appellants' contention that by the use of the word "collisions" the trial court was commenting on the weight of the evidence. The testimony is uncontradicted that there were two separate and distinct collisions between the Buick driven by Higginbotham and the Ford driven by the deceased, and a collision between the O'Keeffe automobile and the pickup. There was only a dispute as to which collision occurred first. We do not believe the language used is subject to the criticism urged by the appellants. By the use of the word "collisions" the court

gave no indication of how the court felt about which impact occurred first. In the first place, we think it is undisputed that there were in fact two separate and distinct impacts. We fail to see how the use of the word "collisions" could be in any way harmful to these appellants.

By another point of error appellants contend the jury can not arbitrarily disregard the direct testimony of Jim Willis. The jury has the exclusive function of determining the credibility of the witness and the weight to be given their testimony. In the case before us the evidence was conflicting in many respects. Under such circumstances juries are given great latitude in believing or disbelieving the testimony of any witness. Juries further are entitled to believe or disbelieve any or all testimony of witnesses. City Transportation Company of Dallas v. Vatsures, Tex.Civ.App., 278 S.W.2d 373; South Texas Coaches v. Woodard, Tex.Civ.App., 123 S.W.2d 395. Assuming that the jury did disregard the testimony of Jim Willis, which the record does not clearly establish, we think the jury was acting within its province to disregard any or all of such testimony.

Another contention made by appellants is that a cumulative effect of all assigned points of error resulted in the defendants not receiving a fair trial. Appellants spell out the contention that this cumulative effect of the trial court's error in using the word "collisions" in its charge, improper argument of appellees' counsel, several acts of misconduct on the part of the jury, and excessive damages constitute reversible error. Having considered the points of error referred to and having determined that they did not individually constitute reversible error, we must conclude that their cumulative effect can not be said to constitute reversible error.

By their seventh point of error appellants complain of the trial court entering a judgment for exemplary damages, contending there is insufficient evidence to support such finding. The jury found defendant John Lanham Higginbotham guilty of three acts of gross negligence: namely, driving his automobile while under the influence of intoxicating beverages, failure to keep his automobile under proper control, and driving his automobile at an excessive rate of speed under the attending circumstances. The jury further found each of the acts of gross negligence was the proximate cause of the collision in question and the resulting death of William T. O'Keeffe.

Plaintiffs introduced several witnesses who observed the defendant John Lanham Higginbotham both before and after the collision, who testified he was intoxicated at the times they observed him and that they smelled alcohol on his breath. The highway patrolman who investigated the wrecks testified that in his opinion Higginbotham was intoxicated, and that Higginbotham took a partially filled whiskey bottle from his automobile and gave it to the patrolman. With the permission of Higginbotham he was given a blood test some two or three hours after the accident, and a chemist from the State Department of Public Safety testified the result of the test showed Higginbotham's blood contained .19 per cent alcohol by weight and this indicated Higginbotham was intoxicated even at the time the blood test was taken —some two and one-half hours after the accident. Higginbotham denied being intoxicated on the occasion in question, but did admit he had had a drink earlier in the morning. The evidence abundantly supported the jury finding that Higginbotham was driving his automobile while under the influence of intoxicating beverages. Article 802 of the Penal Code, Vernon's Ann. P.C. art. 802 decreed it would be a penal offense to drive an automobile on the public streets and highways while intoxicated. By this enactment the Legislature has declared what every person of ordinary prudence and understanding knows: that it is dangerous for an intoxicated driver to operate a motor vehicle on the public streets and

highways, dangerous not only to pedestrians and occupants of other vehicles but dangerous as well to those who ride with the intoxicated driver. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607.

■ Exemplary damages were sought here under Article 16, Sec. 26 of the Constitution of Texas, Vernon's Ann.St. It has been uniformly held that the same quality and degree of negligence is required for a recovery of exemplary damages under the "gross negligence" feature of this section of the Constitution as that necessary under the guest Statute. Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022 and Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571; Schiller v. Rice, supra. The trial court properly defined gross negligence as the " * * * entire want of care which raises belief that the act or omission complained of was result of conscious indifference to rights or welfare of the person or persons to be affected thereby." Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709.

■ The question of whether or not there was sufficient evidence to raise a belief that there existed a conscious indifference to the rights of others on the part of Higginbotham on the occasion in question was a matter to be determined by the jury. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194. After reviewing the evidence of the case most favorable to the jury verdict of gross negligence and the award of exemplary damages, we are of the opinion there was sufficient evidence to support the jury findings of gross negligence and the award of exemplary damages. Appellants' seventh point of error is overruled.

We will next consider the contention that the appellants did not receive a fair trial as evidenced by the damages awarded by the jury. It is their contention that the damages so awarded were excessive and unconscionable. As previously stated the jury awarded the surviving widow the sum of $75,000 and the five surviving minor children $15,000 each as actual damages

making a total recovery of $150,000 for all plaintiffs. The record reveals that the life expectancy of William T. O'Keeffe at the time of his death was 26 years and that the life expectancy of his surviving widow, Violet M. O'Keeffe, was 41 years. At the time of his death O'Keeffe was employed as a paint contractor, but in previous years he had been engaged in various occupations such as an oil field worker, driving a truck and operating a laundry. His wife testified he had worked regularly since their marriage in 1947 except for a few months in 1958 when he was not able to work because of an operation. His wages seem to have varied from $2.50 up to $4 per hour while employed for several months in Alaska. Income from his own businesses varied from $5,000 to $6,000 annually. Several witnesses testified concerning the deceased's good health and ability to earn a living for his family.

■ In determining whether an award for damages is excessive the court should consider whether the award is fair and reasonable under the circumstances of a particular case. Appellants take the position that the fact the damages assessed by the jury were so large it follows that a fair trial was not received. Appellants make no assertion that a remittitur is required under the evidence before us, but Rule 440, V.A.T.R. gives this Court authority to determine if the verdict and judgment is excessive. In Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017, 1022, the Supreme Court interpreted Rule 440 as follows:

"We believe that under this rule a Court of Civil Appeals may require remittitur when, after consideration of the amount of the verdict and the evidence bearing upon the amount, it finds that the verdict is excessive and that the cause should be reversed for that reason only."

Many cases can be cited which both uphold and declare excessive various amounts of awards. However, each case must finally

be determined on the facts and circumstances of the particular case. Here the jury determined that the total amount of actual damages suffered by Mrs. O'Keeffe and her five minor children was $150,000. This amount was divided equally between Mrs. O'Keeffe and the children, with Mrs. O'Keeffe receiving one-half and the five children sharing equally the remaining one-half. In view of the answer to Special Issue No. 40 in awarding actual damages, it appears that the jury disregarded the court's instruction to find only the cash value at the time the loss was sustained. The jury seemed to have given full benefit to the deceased's life expectancy and probable earnings for the period without allowing any discount. This, along with our consideration of all the facts and circumstances lead us to the conclusion that the jury's answer to Special Issue No. 40 is excessive. We are therefore of the opinion that the award in answer to Special Issue No. 40 is excessive by the sum of $25,000.

The record shows that the five minor children were of relatively tender age ranging from ten to six years. Because of the years these children would have been dependent on their father had he lived, we deem it proper that the amount we find to be in excess should be deducted from the recovery of Mrs. O'Keeffe.

Therefore, under Rule 440, V.A.T.R., this Court is under a duty to reverse and remand this case unless appellee, Violet M. O'Keeffe, files a remittitur of $25,000 within fourteen (14) days after the date of this opinion. In the event such remittitur is filed, the judgment of the trial court will be reformed and affirmed to conform with the conclusions above stated.

NORTHCUTT, Justice.

I respectfully dissent.

This suit was brought by Violet M. O'Keeffe, individually and as next friend for certain other plaintiffs, against John Lanham Higginbotham, Higginbotham Cat- tle Co. and Higginbotham Bros. & Co. for damages resulting from the death of William T. O'Keeffe; William T. O'Keeffe being the husband of Violet M. O'Keeffe and the father of the other interested plaintiffs. Higginbotham Cattle Co. was granted a peremptory instruction at the close of the plaintiff's case and will not be considered further herein. The defendants, John Lanham Higginbotham and Higginbotham Bros. & Co., will hereafter be referred to as appellants and all the plaintiffs as appellees.

For their cause of action, the appellees pleaded as follows:

"Violet M. O'Keeffe would show that she is the surviving wife of William T. O'Keeffe who died as a result of injuries received in an automobile collision which occurred on or about the 29th day of January, 1959, about 12:30 P.M. That her husband, William T. O'Keeffe, just prior to his death, was driving his 1956 model Ford automobile, going south on Highway 214, being about six (6) miles north of Denver City in Yoakum County, Texas, when he reached a point on the rise of a hill about 275 feet south of the intersection of Highway 214 and Highway 396, commonly known as the Bennett Road. William T. O'Keeffe was traveling at a lawful and prudent rate of speed on his own proper side of the highway and at that point Defendant John Lanham Higginbotham suddenly crashed into his rear knocking the Ford directly into the path of an on-coming vehicle causing a head-on collision, which resulted in the death of William T. O'Keeffe. Just prior to the collision, John Lanham Higginbotham had swerved his Buick to the left of the center strip as he was traveling south on Highway 214, to pass the Ford while on a hill, saw the approaching vehicle from the south, and cut back to his right with the left front of the Buick striking the right rear of the Ford pro-

pelling the Ford directly into the path of the approaching vehicle."

Then appellees pleaded Higginbotham was negligent in driving the Buick automobile while under the influence of intoxicating beverages; in operating the automobile at an excessive rate of speed under the attending circumstances; in attempting to pass the vehicle driven by William T. O'Keeffe at a time when he could not do so with safety; in failing to keep his automobile under proper control at the time in question; in failing to apply his brakes in time to avoid the collision; in failing to keep a proper lookout; and in failing to yield the right-of-way to O'Keeffe at the time in question. Then pleaded that each and every allegation of negligence, whether taken singularly or together, was a proximate cause of the collision resulting in the injuries and death of William T. O'Keeffe.

Appellants denied in appellants' pleading and in their testimony that Higginbotham ever hit the Ford driven by Mr. O'Keeffe; but that after the Ford and the pick-up collided, the Ford swung around and the right rear of the Ford hit the left front of the Buick, and that was the first time the Ford and Buick came in contact with each other. The case was tried to a jury upon special issues, and, upon the answers of the jury, judgment was rendered for the appellees for the sum of $170,000. From that judgment, the appellants perfected this appeal.

In presenting appellees' contention on the different alleged negligence acts of Mr. Higginbotham, the Court asked the jury if they found from a preponderance of the evidence on the occasion of the collisions in question that Higginbotham did a certain thing and then asked whether the act was negligent and if that negligence was a proximate cause of collisions in question. The appellants presented their exceptions to the Court's charge in submitting the issues as, "collisions" in that the use of the plural in connection with

collisions was a charge upon the weight of the evidence. The appellees pleaded only one collision as the real cause of the accident and that was the hitting of the Ford by the Buick. The trial court overruled all of appellants' exceptions to the Court's charge.

Appellants presented their appeal upon nine points of error, but since I am of the opinion that the case should be reversed, I will only discuss points six and eight presented by appellants, since their other points might not arise upon another trial. However, I agree with the majority opinion that the damages assessed under this record were excessive. By appellants' sixth and eighth points of error, it is contended that the trial court erred in charging on the weight of the evidence to the effect that there were two separate and distinct collisions in the case.

The real question here involved is, did the Buick which was driven by Mr. Higginbotham hit the Ford that was driven by Mr. O'Keeffe? The burden was upon the appellees to establish and secure proper finding by the jury upon the proper issues involved.

Under the theory of appellees, unless the Buick driven by Mr. Higginbotham struck the Ford driven by Mr. O'Keeffe and drove it across the highway in front of his pickup, the appellants would not be liable for the death of Mr. O'Keeffe. When the trial court submitted its special issues based upon the "collisions in question", that was submitting it as a fact to the jury that there was a collision between the Buick and Ford as alleged by the appellees. The circumstantial evidence as produced was to the effect that the Buick hit the Ford and caused it to have the wreck with the pick-up. The eye witnesses to the wreck testified the Buick never did hit the Ford at all but that the accident happened as contended by the appellants. The engineer, Melton, testified the accident could not have happened any way other than as contended by the appellants.

Appellees pleaded that the Buick crashed into the rear of the Ford knocking it directly into the path of the on-coming vehicle (the Chevrolet pick-up) causing a head-on collision which resulted in the death of William T. O'Keeffe. Mr. O'Keeffe's death happened by the collision of the Ford and Chevrolet pick-up. Then the real question to determine is whether the Buick knocked the Ford into the path of the on-coming Chevrolet pick-up. Consequently, if the Ford driven by Mr. O'Keeffe was never struck by the Buick compelling the Ford into the path of the on-coming pick-up, the only collision involving the death of Mr. O'Keeffe was the one between the Ford and the pick-up. Since it was a disputed issue as to whether the Buick struck the O'Keeffe Ford, the appellees should have had a finding of the jury thereon. In the absence of such a finding, and the court's special issues asking whether certain facts existed on the occasion of the collisions in question, was saying Higginbotham hit the Ford knocking it into the path of the pick-up. In other words, the manner in which the case was submitted to the jury simply stated, was Higginbotham negligent in these particulars when he hit the Ford. If the Higginbotham car did not strike the O'Keeffe car and knock it directly into the path of the Chevrolet pick-up, as alleged by appellees, and it certainly was a question of fact, the acts of Higginbotham could not have been the proximate cause of the accident and death of Mr. O'Keeffe.

The appellants excepted to the Court's charge, and the Court overruled the exceptions and also overruled appellant's motion for new trial involving their exceptions. I think these exceptions and objections were sufficient to call to the Court's attention the failure of the charge to contain issues on which the opposite parties relied, and that the objections need not be accompanied by a tender of an issue in proper form. Texas Employers' Ins. Ass'n v. Thames, Tex.Civ.App., 236 S.W.2d 203

(writ refused). The defendants owed no duty to request submission of issues essential to the plaintiff's recovery. Alexander v. Good Marble & Tile Co. et al., Tex. Civ.App., 4 S.W.2d 636 (writ refused), Rodriguez v. Higginbotham-Bailey-Logan Co., Tex.Civ.App., 172 S.W.2d 991 (writ refused). It was plaintiff's duty to request that a correct special issue be submitted to the jury as to whether the Buick struck the Ford as contended by appellees. The best appellees could contend was that their circumstantial evidence in the face of direct testimony presented a controversial question as to the collision of the Buick with the Ford as was alleged. Certainly the appellants made exceptions to the charge sufficiently clear to call the Court's attention to the incorrectness of the same. Schoenberg v. Forrest, Tex.Civ.App., 228 S.W.2d 556 (writ refused N.R.E.).

Under this record, and, as shown in the case of City of Houston v. Woolridge et al., Tex.Civ.App., 241 S.W.2d 641 (writ refused N.R.E.), I think the trial court should have submitted the question of whether the Buick struck the Ford and propelled it across the highway directly in front of the pick-up instead of assuming the Buick collided with the Ford as contended by appellees. As I view the charge, it amounted in legal effect to a charge on the weight of the evidence. I think the judgment of the trial court should be reversed and remanded.

Supplemental Opinion.

DENTON, Chief Justice.

On November 7, 1960, appellee, Violet M. O'Keeffe, filed a remittitur of $25,000 in compliance with the suggestion of remittitur in the majority opinion of date October 31, 1960. The judgment of the trial court will be reduced by the amount of the remittitur and as so modified the judgment of the trial court is affirmed.